THE STATE ex rel. MISSISSIPPI RIVER & BONNE TERRE RAILWAY COMPANY v. WILLIAM H. ALLEN et al., Judges of St. Louis Court of Appeals.

In Banc, May 23, 1925.

CERTIORARI: Conflict of Opinion: General Demurrer: Instruction under Humanitarian Rule: Estoppel. A ruling by the Court of Appeals, that the defendant, having asked an instruction in the nature of a demurrer, merely directing the jury that plaintiff was not entitled to recover and that their verdict must be for defendant, and such instruction having been overruled, asked another hypothesizing the facts which would forbid a verdict for plaintiff under the humanitarian rule, is not in a position to assert on appeal that plaintiff made no case under that rule and is estopped, by the instruction based on that rule, to assert that its doctrine is not in the case or that no case was made for the jury under that rule, did not contravene the previous rulings of this court, but followed the decision in Torrance v. Pryor, 210 S. W. l. c. 432.

Citations to Headnote: Appeal and Error, 4 C. J. secs. 2617, 2621.

*Certiorari.*

WRIT QUASHED.

State ex rel. Railway Co. v. Allen.

*Politte Elvins* and *W. E. Bennick* for relator.

(1) In holding that defendant was estopped to say that no case was made for the jury, the decision of the Court of Appeals conflicts with the controlling decisions of this court. Crum v. Crum, 231 Mo. 626.; Torrance v. Pryor, 210 S. W. 433; Matz v. Railroad, 217 Mo. 275; Everhart v. Bryson, 244 Mo. 507; Kenefick-Hammond Co. v. Ins. Society, 205 Mo. 294. (2) In holding that the offering of an instruction on defendant's theory of the humanitarian doctrine, even though withdrawal instructions had not been requested, precluded defendant from assigning error in the giving of an instruction for plaintiff on another and different theory of that doctrine, the decision conflicts with the controlling decisions of this court. Torrance v. Pryor, 210 S. W. 433; Mt. Vernon Car Mfg. Co. v. Mill Co., 285 Mo. 669. (3) Relator's theory of the humanitarian rule as applied to this case, viz., that it could be held liable only for what its servants actually saw, is correct. Such being true, there was no evidence upon which the case should have gone to the jury. Degonia v. Railroad, 224 Mo. 564; Van Dyke v. Railroad, 230 Mo. 259; Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Kirkland v. Bixby, 282 Mo. 462.

*Curlee & Hay* and *Marsalek & Stahlhuth* for respondents.

(1) The opinion of the Court of Appeals, in holding that relator, by failing to ask an instruction specifically withdrawing the humanitarian doctrine, and by joining in the submission of that issue to the jury, estopped itself to contend that said issue was not in the case, is not in conflict with the last previous ruling of this court. Torrance v. Pryor, 210 S. W. 430; Crum v. Crum, 231 Mo. 626; Bettes v. Magoon, 85 Mo. 580; Chinn v. Naylor, 182 Mo. 594; Mirrielees v. Railroad, 163 Mo. 486; Deschner v. Railroad, 200 Mo. 332; Davidson v. Hines, 246 S. W. 303; Phillips v. Railroad, 226 S. W. 866; Simpson v. Wells, 237 S. W. 527; Sec. 1512, R. S. 1919. (2)

Under the facts of the present case, it was the duty of relator's employees operating the locomotive by which Ramsey was killed to maintain a watch for him. They had no right, under the circumstances, to presume the track would be clear. Greenwell v. Railroad, 224 S. W. 407; Crecelius v. Railroad, 284 Mo. 40; Kippenbrock v. Railroad, 270 Mo. 484; Ostertag v. Railroad, 261 Mo. 257.; Schlereth v. Railroad, 115 Mo. 106.

WALKER, J.—This case came to the writer of this opinion by re-assignment April 11, 1925.

*Certiorari.* It is sought in this proceeding to quash the record of the St. Louis Court of Appeals in the case of Sarah C. Ramsey v. Mississippi River & Bonne Terre Railway Company. That suit was instituted by Mrs. Ramsey in the Circuit Court of St. Francois County, to recover damages for the death of her husband, alleged to have been killed by the negligent operation of a locomotive by the railway company. Upon a trial a judgment was rendered against the railway company, and an appeal by the latter to the Court of Appeals resulted in an affirmance of the judgment.

The rulings of the Court of Appeals in the rendition of the judgment are contended by the relators to be in conflict with opinions of this court.

The plaintiff's husband, for whose death she recovered damages, was for many years an employee of the railway company. He was a "general clean-up man" about the yards, and in addition did the work incident to the drying of sand for use in the railway company's locomotives. While pushing a wheelbarrow filled with coal towards the house where he dried the sand, he was struck and killed by one of the railway company's locomotives. The engineer operating the locomotive or engine at the time testified that he did not see Ramsey upon the track before he struck him. That when he last saw Ramsey the latter was standing by the side of the engine with the wheelbarrow, talking to one of the helpers; that shortly thereafter the engineer rang the

bell and moved the engine a few feet. Noticing that
the track south of him was blocked he reversed the en-
gine, and after moving fifteen or twenty feet north he
felt the engine strike something, but could not see what
it was; that from his side of the cab the air pump and
a curve in the track did not enable him to see an object
on the track immediately in front of the engine. Testify-
ing further he said:

"I knew about this habit of Mr. Ramsey when I
backed up, and I knew it when I started forward. I
didn't look to see whether Mr. Ramsey had stepped in
front of the train that morning, or not. I didn't even
look to see whether he was on the platform, or not.
While he was standing on the platform he was about at
the gangway where the tender couples on to the engine.
After backing up I reversed the engine and then, sud-
denly and instantly, I started it and went straight on
forward.

"Q. Never stopped at all? A. I stopped when I
heard the wheelbarrow, when I hit it."

Townsend, a fire-cleaner, was at the time in the cab
on the fireman's side and when he felt the engineer strike
something he looked forward and saw Ramsey falling
out from the track toward the west.

The petition, as is disclosed in the Court of Appeals
opinion, counted on several acts of negligence, among
others a right of recovery is predicated on the humani-
tarian doctrine. It is averred in this charge that Ram-
sey, when struck, was in a position of peril upon the
track, in danger of being struck by the engine and ob-
livious of his peril; that the railway company's servants
in charge of the engine by the exercise of ordinary care
to keep a lookout ahead could have discovered his peril-
ous position in time, by the exercise of ordinary care,
with the appliances at hand, to have averted striking
him, but failed to do so.

The answer was a general denial, coupled with
contributory negligenct and assumption of risk.

At the close of plaintiff's case and again at the close of the entire case the defendant offered a peremptory instruction in the nature of a demurrer to the evidence, which in each instance was refused. Thereupon the plaintiff abandoned her other assignments and by an instruction submitted the case to the jury, asking a recovery under the humanitarian doctrine.

The instruction (numbered one), asked by the plaintiff and given by the court which predicated a recovery under the humanitarian doctrine, averred in substance: that if the jury believed from the evidence that the deceased was in a position of peril upon the track and in danger of being struck by the engine and was oblivious of his peril and that the defendant's servants in charge of the engine, by the exercise of ordinary care to keep a lookout ahead, could have discovered his perilous position in time, by the exercise of ordinary care with the appliances at hand, to have averted his injury and death, but failed to do so, then the jury was authorized to find a verdict in favor of the plaintiff.

The defendant offered no withdrawal instructions, but asked and was given an instruction (numbered two) upon the humanitarian rule, telling the jury, in substance, that if they found from the evidence that the deceased left a place of safety and entered and remained upon the defendant's tracks so close in front of the engine as to make it impossible for defendant's servants in charge of its engine, by the exercise of ordinary care, to see him and that defendant's servants did not know and could not, by the exercise of ordinary care, have known of his peril in time to have avoided the injury which resulted in his death, then they were authorized to find for the defendant.

The defendant, as relator here, contends that the Court of Appeals erred: (1) in holding that its general demurrer precluded it from seeking a review of all of the evidence; (2) and that its submission of the case under the humanitarian doctrine estopped it from insisting that there was no evidence to authorize the submission of

the case to the jury upon the plaintiff's theory as disclosed by the latter's instruction, numbered one, above set forth; and in so holding that the Court of Appeals contravened certain rulings of the Supreme Court.

These contentions were made by the defendant below in its motion for a new trial and were overruled by the trial court. The reasoning of the Court of Appeals in sustaining the ruling of the court below is pertinent, although their presentation involves a repetition of facts heretofore stated. In that connection the Court of Appeals says:

"But we are led to the conclusion that the defendant is not here in a position to assert that plaintiff made no case under the humanitarian doctrine. At the trial below defendant's demurrer to the evidence, or peremptory instruction in the nature of a demurrer to the evidence, was a general one, not specifically directed to the humanitarian doctrine invoked by the petition. The defendant merely requested the court to instruct the jury that the plaintiff was not entitled to recover and that the verdict must be for the defendant. And defendant offered no withdrawal instructions. When the case went to the jury defendant requested and the court gave an instruction (numbered two) telling the jury, in substance, that if they found from the evidence that Ramsey left a place of safety and entered and remained upon defendant's tracks so close in front of the engine as to make it impossible for defendant's servants in charge of its engine, by the exercise of ordinary care, to see him, and that defendant's said servants did not know and could not, by the exercise of ordinary care, have known of his peril in time to have avoided the injury which resulted in his death, then to find a verdict for defendant. In other words, defendant asked and received an instruction on the humanitarian doctrine, as counted upon in the petition, and having thus invited the judgment of the jury on that issue, defendant is estopped to say that that doctrine is not in the case or that no case was made for the jury under that theory."

In support of this ruling the Court of Appeals quotes at length the ruling of the Supreme Court in Torrance v. Pryor, 210 S. W. (Mo.) l. c. 432, where a like situation was presented as in the instant case. The gist of the ruling in that case in regard to the question under consideration was that where a defendant in an action for personal injuries had asked and received an instruction upon the humanitarian doctrine he will be estopped from alleging that error was committed in the giving of an instruction for the plaintiff on the same theory where the defendant's demurrer to the evidence did not specifically challenge the evidence under such theory. The Supreme Court, speaking through GRAVES, C. J., in the Torrance case says:

"Here the demurrer challenged the whole case, and the evidence upon all of the several alleged grounds of negligence. In overruling such a demurrer, the court does not indicate its theory upon any particular ground of negligence. In such case, it is sufficient for the trial court to find (in its own mind) that the evidence does sustain one or more of the alleged grounds of negligence. Nor does such a general demurrer call upon the court to indicate the ground in mind. So that, when this general demurrer was overruled in this case, the defendant was in no position to say that the court, in overruling it, has said that violation of the humanitarian rule is in the case, and the defendant thereby authorized to ask instructions thereon per force of the ruling of the court. Under the status we have in this case, we should, and do, rule that defendant, having asked and received an instruction upon the humanitarian doctrine, cannot now plead error upon the part of the trial court in giving one for plaintiff on the same theory. Had the demurrer to the evidence specifically challenged the sufficiency of the evidence upon this point, then we would have a different rule. The defendant in such case should not be estopped by getting the best instructions he could under the theory of the case adopted by the court. In this case, however, the defendant is now estopped from say-

ing that the humanitarian doctrine is not in the case, and a review of the evidence upon that question is not necessary.''

In Crum v. Crum, 231 Mo. 626, a similar conclusion was reached in regard to the effect of a participation by an appellant in assigned error. ''In such a case,'' says the court in effect, ''consent heals the error; if any. The trial judge should not be convicted of error in doing what both parties asked him to do in declaring the law. Participation is tantamount to precluding future objections.'' [Page 639.]

Torrance v. Pryor, supra, is the last previous ruling of the Supreme Court upon the issues here submitted as constituting the grounds of conflict urged by the relator. He who runs may read that the rule as announced in that case, instead of contravening the ruling of the Court of Appeals, furnishes ample authority for its exercise under a state of facts as nearly identical with those in the instant case as it is reasonably possible for one case to be with another. This being true no authority existed for the issuance of our preliminary writ and it is therefore quashed. All concur, except *Graves, C. J.,* and *Blair, J.,* who dissent.