JENNIE MALLOY, Appellee, v. STODDARD CONSTRUCTION COMPANY, Appellant.

**TRIAL:** Reception of Evidence—Non-Explanatory Questions. The exclusion of a question is justified by the fact that it is wholly non-explanatory of the character or nature of the testimony sought to be introduced, and counsel fails to enlighten the court thereon.

**TRIAL:** Reception of Evidence—Objections—Waiver. He who has his testimony rejected on the objection of only one of several defendants, each of whom pleads separate and distinct defenses, must insist on the admissibility of such testimony against the non-objecting defendants, or the objections will be waived.

**NEGLIGENCE:** Acts Constituting—Independent Contractors. Admission by one that he was under a duty to perform a certain act necessarily excludes any claim that he had passed such duty to an independent contractor.

**EVIDENCE:** Documentary Evidence—City Ordinance—Negligence. Ordinances regulating the use of streets in private building operations are admissible in connection with the evidence that such regulations were violated, with resulting injury to another.

**NEGLIGENCE:** Evidence—Weight and Sufficiency. Evidence reviewed, and held to present a jury question whether evidence of the violation of ordinance requirements in the use of a street covered the point in the street where plaintiff claims to have been injured.

Vol. 183 IA.—56

**NEGLIGENCE:** Contributory Negligence—Obstructed Street—
6 **Choice of Ways.** It is not necessarily negligence *per se* for a
pedestrian, though blind, to attempt to pass over obstructions
in a much used and, to him, convenient street, of which obstruc-
tions he had prior knowledge.

**TRIAL:** Verdict—$1,250—Excessiveness. Verdict for $1,250 for per-
7 sonal injury sustained. A bone in the arch of plaintiff's foot
was slightly misplaced, with consequent swelling, pain, and
lameness. A year after the injury, a full cure had not been
effected, and probability existed that the defect would be per-
manent.

*Appeal from Webster District Court.*—E. M. McCALL, Judge.

MAY 20, 1918.

ACTION at law to recover damages for personal injury.
Verdict and judgment for plaintiff. Defendant appeals.—
*Affirmed.*

*Kenyon, Kelleher & Price,* for appellant.

*H. W. Stowe,* for appellee.

WEAVER, J.—South Seventh Street in the city of Fort
Dodge extends in a southerly direction from the principal
business section of the city, crossing the right of way of
the Illinois Central Railway Company. The railway track
is carried over and across the street upon a bridge elevated
sufficiently to permit the free and unobstructed use of the
public way. South of the railroad and west of Seventh
Street, the railway company maintains a roundhouse, for
use in connection with its business. In the year 1915, the
company undertook to enlarge and improve its roundhouse
accommodations, and let the contract therefor to the Stod-
dard Construction Company. The performance of the work
involved the tearing down of a part of a brick structure
standing near Seventh Street, the excavation of certain pits,
and the leveling or excavation of a site for the extension of
the roundhouse in the direction of the railway track on the
north. The old brick wall standing near Seventh Street

was torn down by the contractor by the use of a cable op-
erated by a dummy engine, and the earth from the pits was
loaded in cars and hauled away to some distance.  For the
excavation of the enlarged site of the roundhouse, scrapers
were employed; and in this manner the earth was moved
to the east and north, across the sidewalk and traveled road-
way, and dumped upon the railroad right of way.  This
last mentioned work was performed by William Qualey, un-
der a contract or agreement of some kind with the Stoddard
Construction Company.  This part of the work was begun
about September 25, 1917, and continued several weeks.
The plaintiff lives on the south side of the railroad, and the
most direct and convenient route between her home and
the business section is South Seventh Street and the side-
walk already referred to.  Plaintiff is a married woman, 35
years old, and is nearly blind.  On the evening of October
4, 1915, accompanied by her son, a boy of 13 years, she was
returning from town along the sidewalk on the west side of
Seventh Street.  As they reached a point south of the via-
duct and near the roundhouse, the boy, whose arm plain-
tiff held, stumbled, and dropped some of the groceries which
he was carrying; and, as he was engaged in gathering them
up, his mother fell, and received the injuries of which she
complains.  It is her claim that her fall was caused by step-
ping upon or against a brick which, with other rubbish, had
been dropped or left on the sidewalk by the appellant in
the wrecking of the old roundhouse wall and the removal
of the debris and earth from said premises to the opposite
side of the street.  Charging negligence with respect to
such condition, she brought this action, uniting as defend-
ants therein the Stoddard Construction Company, the Illi-
nois Central Railway Company, the city of Fort Dodge, and
William Qualey.  The last named person has since died,
and his administratrix, Margaret Qualey, has been substi-
tuted as one of the defendants.  At the close of the trial

below, the court directed a verdict in favor of the railway company; and, upon submission to the jury of the issues as to the other defendants, a verdict was returned in plaintiff's favor against the Stoddard Construction Company only. There is no appeal by the plaintiff, and the consideration of the case in this court will be confined to the questions raised by the appeal of the construction company.

The petition sets out the alleged facts concerning the plaintiff's injury, and charges that it was occasioned without fault on her part, by the obstruction of the walk, negligently occasioned by the defendant in prosecuting said work, and negligently permitted to remain and continue, creating a source of danger to persons lawfully making use of the public way. The defendant's answer is a simple denial of all the allegations of the petition.

I. There was evidence tending to show that appellant wrecked a part of the old brick wall of the roundhouse, and that, in the progress of that work, brick and debris so produced fell upon or were scattered over the sidewalk. It is also probable that some of the brick of the old wall were scattered over the earth which was later excavated for the enlargement of the building; and that, in scraping out this earth and brick, some of these materials were dropped upon the walk, creating a degree of obstruction to its public use. Plaintiff charges negligence in these respects, and avers that it was the proximate cause of her injury. Defendant contends that the rubbish cast upon the walk in wrecking the wall had been removed before plaintiff's injury; and that whatever obstruction may have existed at that time and place was caused by William Qualey, who alone was responsible for the work of excavation and removal of the material across the walk; and that for Qualey's negligence, if any, appellant cannot be held liable. Bearing upon this

1. TRIAL: reception of evidence: non-explanatory questions.

proposition, we may consider the first assignment of error which is argued by counsel.

The vice-president of the construction company, being examined as a witness, testified that, as representative of said company, he was present at Fort Dodge during the week beginning August 24, 1915, and after that at intervals of a week or two weeks, during the progress of the work. He further says:

"Arrangements were made for the removal or excavation of a portion of that work which was excavated there. That arrangement was an oral contract. Dirt was excavated under the contract thus made.  *  *  *  The dirt that was removed under our arrangement with another person was removed by scrapers. It was worked out into Seventh Street under the viaduct and onto the I. C. right of way."

In the further development of this witness' testimony this record was made: On direct examination by appellant's counsel the witness was interrogated as follows:

"Q.  What was the arrangement under which that portion of the dirt was removed, which was removed out over the sidewalk under the viaduct and onto the right of way? Mr. Thomas: If it is intended by this question to call for the terms of the oral contract, or anything connected with it to which this witness has referred, we want to cross-examine him before he answers. Mr. Price: The purpose of this question is not to ask, at this time, with whom the oral contract was made, but what the terms of the oral contract were. Mr. Thomas: Then we object to the answer to the question before we have a chance to cross-examine, on the ground that no proper foundation is laid. The Court: Sustained, and counsel will be permitted to cross-examine the witness in regard to those matters which he desires. (Defendant Stoddard Company excepts.)"

Being cross-examined by Mr. Thomas, whose appear-

ance in the case was for the administratrix of the estate of William Qualey alone, and having answered that the person with whom he had an oral arrangement to make the excavation was William Qualey, counsel for the administratrix objected to the competency of the witness to testify to any agreement made with the deceased; and the objection was sustained. On further re-direct examination, the witness said, in substance, that Qualey did the work with his own teams, tools, and employees, and the construction company took no part therein.

Counsel for appellant, complaining of the rulings, say they "simply ruined the construction company's defense." The point sought to be made, if we understand counsel, is that the testimony ruled out was intended to show that Qualey was an independent contractor, and that, if there was any negligence in obstructing the sidewalk, it was the negligence of the independent contractor, and not of the appellant. The correctness of the rulings upon the objection of the defendant Qualey to the competency of the witness may well be doubted; but even if wrong, we think the error was without prejudice to this appellant. The defense here suggested had not been pleaded; and, although the question of Qualey's being an independent contractor was probably one which could have been raised under an answer pleading a denial only, counsel should have at least explained the character or nature of the testimony they proposed to introduce. As will be seen by the quotation above made from the abstract, counsel asked no more than "What arrangement was made under which the dirt was removed out over the sidewalk and onto the right of way?" The question carries with it no suggestion as to the person, if any, with whom such arrangement was made, nor how nor why such arrangement was supposed to be material or relevant to the issues being tried. Indeed, counsel for appellant at the time stated to the court that he was not asking with whom

the contract was made, "but what the terms of the oral contract were." In other words, he was asking the witness to testify to the fact and terms of an oral contract with some person as yet unnamed and unknown. That such testimony was immaterial is too clear for argument, and appellant suffered no prejudice by its exclusion.

Again, each of the four parties named as defendants appeared by their own counsel, and each pleaded a separate and distinct defense. The objection to the competency of the witness to testify to the construction company's dealings with Qualey was raised by counsel for the administratrix alone; and it was still competent for appellant to insist that, if such objection were sustained on the demand of Qualey's administratrix, the evidence was yet admissible on the issue joined between the appellant and plaintiff. No such demand was made or refused, and the objection must be treated as waived.

2. TRIAL: reception of evidence: objections: waiver.

Still again, it is to be said that the matter which counsel now say they desired to elicit from this witness appears to have been quite fully developed in other portions of his examination, as well as in the testimony of other witnesses.

II. We are, furthermore, of the opinion that defendant's own showing demonstrates that Qualey was not an independent contractor, and that appellant did not expect or require him to assume the duty of cleaning the sidewalk of the obstructions caused by moving the excavated materials across its course. Appellant's superintendent of the work in question, Mr. Shontz, testifying for the defense, says that the construction company did the work of wrecking the old wall; and, after describing the manner in which Qualey did the work of excavation, and stating the fact that, at times at least, this work left dirt and debris on the sidewalk, he says:

3. NEGLIGENCE: acts constituting: independent contractors.

"It was my business to see that the sidewalk was clean. I made an attempt to keep that sidewalk clean all the time. I testified on direct examination that, up where Qualey's men cleared off the walk, it was cleaned off part of the time. I did not look every night to see if it was clear. There was not all kinds of rubbish on the walk all the time. I never saw any rubbish on the sidewalk at quitting time. If I had, it would have been cleaned off, because it was my duty. * * * It was my business to keep the walk by the roundhouse clean. In a way, that included the place where Qualey was doing his work."

This testimony is nowhere denied, and the situation so revealed by the appellant itself is inconsistent with the defense asserted in argument. It makes little difference what may have been the terms of the contract or agreement in other respects between the construction company and Qualey, so long as it is admitted that the duty remained upon the company to clean or care for the walk. This situation makes it unnecessary for us to consider the general proposition as to how far, if at all, it is competent for a principal contractor, who undertakes a work a part of which, in its nature, involves more or less obstruction to the public use of a sidewalk, can avoid liability with respect to such use by subletting that part of the work to another contractor. It is sufficient, for the purposes of this case, to say that appellant, having by its contract undertaken the entire work, is *prima facie* answerable for the manner of its performance; and, if it would free itself from responsibility because the obligation had been assumed by a subcontractor, who alone became charged with the duty of keeping the walk clear of obstruction, there must be testimony upon which the jury would be justified in finding such to be the fact. The testimony before us not only fails to show the existence of such fact, but, as we have said, negatives it.

III.    The plaintiff pleaded and put in evidence an or-

dinance of the city of Fort Dodge which, after stating that
any person erecting a building upon a lot abutting on a
public street may use one half the street for
depositing building materials, provides that
one who so uses the street shall maintain
suitable passageways and driveways around
said material, and fence and protect the excavation made,
if any, and at night shall place and maintain lights around
the obstruction, to insure the safety of persons and teams
in the use of the public ways.   There was evidence. that
brick and lumber were piled by the side and on or near the
walk, and that some of the work by mechanics in prepara-
tion of materials for the building was done on the walk,
making it necessary for pedestrians to go out into the street;
and that these conditions were frequent, if not continuous.
The testimony in these respects was not without dispute;
but its truth was for the jury, and made proper the admis-
sion of the city ordinance in evidence, as well as the court's
reference thereto in its instructions.   Ap-
pellant seeks to avoid this conclusion by
insisting that such evidence as there is,
pointing to a neglect of this duty prescribed
by ordinance, does not relate to the place or point on the
walk where the plaintiff claims to have been hurt; but it
fairly appears that practically all the walk abutting on
the roundhouse property was more or less obstructed, in
part by building materials and in part by the debris scat-
tered and dropped thereon.   The testimony does tend to
show that the dirt and materials scattered by the scrapers
were upon the more northerly portion of the street front,
while the building materials were a little further south;
but the exact spot where the plaintiff fell is not shown with
absolute certainty, except that it was upon the walk front-
ing upon this property.   She says it was soon after she
passed through under the viaduct, but that she can't tell

4. **EVIDENCE:**
documentary
evidence:
city ordinance:
negligence.

5. **NEGLIGENCE:**
evidence:
weight and
sufficiency.

how far she had gone. She had already "passed over quite
a little bit" of the dirt, but "doesn't know about what dis-
tance from the bridge." At another stage of her examina-
tion, she says the place was "up near the end of the addi-
tion to the roundhouse, and not down by the old round-
house." The nearest the son comes to locating the place is:

"Just as we got on the other side, on the south side of
the viaduct. * * * My mother fell at a point two or
three feet south of the point where they were hauling the
dirt across the sidewalk."

Speaking of the dirt on the walk where the men hauled
the dirt across, he further says:

"We had passed over that dirt before mother fell, and
had reached a part of the walk where there wasn't so much
dirt. * * * There was quite a few brick there, but fur-
ther down there was more brick."

Of the continuous character of these obstructions, one
witness, who used the walk daily, having located on a dia-
gram a point "where they crossed with scrapers," says:

"Sometimes the teams would meet there, and there
would be dirt the width of two teams. Lumber was piled
right on the edge of the sidewalk; besides the lumber, there
was brick. They set their saw horses on the sidewalk. The
carpenters would put timbers on the saw horses that would
cause us to pass out in the mud off the walk. There was
not any bunch of brick piled on the walk, but that kept it
dirty all the time,—half brick, whole brick, gravel, and such
stuff, coming from the building, and at Figure X, dirt
where they came through with their scrapers. From that
point on down, it was dirty. There were half brick and
whole brick and lumber. I wouldn't say how long the brick
were scattered on the sidewalk. The sidewalk was dirty
all summer when they worked there. It was late in the fall
when they finished. It was not cleaned off before the ex-
cavation was completed."

In view of this and other testimony bearing in the same direction, the court cannot say, as a matter of law, that the obstruction complained of was not in that part of the walk south of the debris scattered by Qualey's scrapers, or that it was wholly north of the place where appellant occupied the street and walk with its materials and workmen, or that there is no evidence tending to show a failure by appellant to observe the caution required by the city ordinance, or that its negligence in this respect was not the cause of the plaintiff's injury.

IV.    Is the plaintiff chargeable with contributory negligence, as a matter of law? It is so argued by the appellant, but the record will not permit such a ruling. It is true that plaintiff and her son, who was assisting and guiding her, had passed over this sidewalk on the afternoon of the same day she was hurt, and that both of them knew of the general nature and character of the obstructions; but this alone does not negative plaintiff's right to recover. To dispose of the question on appellant's theory, the court should be able to say, as a matter of law, that the dangerous character of the walk was so clear and patent, and the peril of injury to one attempting its use was so great, that a prudent person would have sought some other route; and such is not the showing revealed by the record before us. Seventh Street not only appears to have been the direct and usual route between the plaintiff's home and the business section of the city, but the only other way suggested in the testimony was quite indirect, and by way of a street which was without sidewalks. Neither Seventh Street nor the sidewalk had been closed or barricaded, and both were being used to a greater or less extent by the public. Plaintiff had just taken that route to town, and we think it not unreasonable that she should have believed that she could make the return trip in safety. She may not have

6. NEGLIGENCE: contributory negligence: obstructed street: choice of ways.

exercised the best possible judgment or the highest degree of wisdom in so doing, but such failure does not necessarily constitute negligence, and the jury may still be justified in finding that she exercised the degree of care which the average or ordinarily prudent person would have used under similar circumstances.

V. Finally, it is argued that the damages assessed in plaintiff's favor, $1,250, are excessive. Counsel say that the injury was, at most, a simple sprain of the ankle or foot, and the resulting inconvenience comparatively slight; but this is not quite correct. The medical evidence tends to show that there was no fracture of the bones of the ankle or foot, but also tends to show a displacement of one of the bones in the arch of the foot, leaving it slightly raised, making the plaintiff lame, and causing much pain and inconvenience. Immediately following the injury, plaintiff's foot and ankle became swollen; and on the following morning, she called in a physician, who treated the injured member four or five times. According to her story, it continues to pain her and to render it difficult for her to perform her usual work. On the trial below, a year after the injury, there was testimony tending to show that a cure had not yet been effected, and that the abnormal condition of the foot would be likely to be permanent, though there was a possibility of improvement, with proper treatment. The verdict is not so excessive as to suggest passion or prejudice on the part of the jury, and we find no sufficient ground for reversal on that score.

7. TRIAL: verdict: $1,250: excessiveness.

Other exceptions on the part of appellant are either not sustained by the record, or are clearly controlled by the conclusions we have already announced. The judgment of the district court is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.