B. E. PECKINPAUGH, Appellee, v. A. E. ENGELKE, Appellant.

No. 41784.

April 4, 1933.

Gill & Gill, for appellant.

Stewart & Hatfield and Prichard & Prichard, for appellee.

Donegan, J.—Primary Highway No. 141 is a regularly established and paved highway running from Denison, Iowa, to Sioux City, Iowa. About 6 o'clock in the evening of December 9, 1930, plaintiff, Peckinpaugh, was riding in his automobile and going northwesterly on said paved highway from the town of Smithland

toward his home. Plaintiff's automobile was being driven by his nephew, Vernon Kirkpatrick, a boy then 13 years of age. At a point approximately three miles north and west of Smithland, said highway curves toward the west. When plaintiff's automobile reached a point about the west end of such curve, or a short distance west therefrom, it collided with the rear end of a stock truck owned by the defendant which was standing unlighted on the road, and as a result of this collision plaintiff's automobile was damaged and he received personal injuries for which he sues.

In his amended and substituted petition plaintiff alleges that the defendant was negligent in failing to have said truck equipped with a red light or any light whatsoever so constructed, placed, and lighted so as to be visible to persons approaching the rear of said truck, that the defendant and the driver of his truck left said truck standing upon the paved portion of the highway at a time more than one-half hour after sunset without having any light upon the rear of said truck, and that the defendant and the driver of said truck wrongfully obstructed the said highway by permitting said truck to stand on the paved portion of the highway at a time when it was dark. Defendant denied the allegations of plaintiff's petition, and alleged that the accident was caused by the contributory negligence of plaintiff and Vernon Kirkpatrick, the driver of his automobile.

The case was tried to a jury. At the close of all the evidence, defendant moved the court for a directed verdict, which motion was overruled. After arguments had been completed, and, before the court had delivered his charge to the jury, plaintiff, by leave of court and over the objections of the defendant, was allowed to file an amendment to his amended and substituted petition, by adding to the grounds of negligence set out therein the allegation that the defendant and the driver of defendant's truck were careless and neglected, after defendant's car had failed to move or be propelled by its own power, to erect any barrier or to signal approaching cars and especially the car of the plaintiff. The cause was thereupon submitted to the jury, which returned a verdict in favor of the plaintiff for $2,500, and judgment was entered thereon. Defendant filed a motion for a new trial and exceptions to instructions, which were overruled by the court. Appeal was thereupon taken to this court from the judgment on the verdict of the jury, from all rulings and orders of the court entered in the trial of the case, and from

the order of the court overruling defendant's motion for new trial and exceptions to instructions.

The appellant sets out several alleged errors upon which it relies for reversal. The most important of these allegations of error are that the evidence was not sufficient to show any negligence on the part of the defendant or the driver of his truck, and that the plaintiff and the driver of his automobile were guilty of contributory negligence.

I. Appellant contends that there is not sufficient evidence of negligence on the part of the driver of his truck to support the verdict against him. In order to dispose of this contention, it is necessary to briefly examine the evidence on this point. The driver of the truck was a witness, and testified that up to just a few moments before the accident his truck had been going along very nicely; that suddenly the lights went out and the engine ceased to operate; that he coasted over toward the right-hand side of the pavement and off on the shoulder of the road as far as he could go without going into the ditch; that, when his truck came to a stop he tried his starter and found that it did not work; that he immediately got out of the truck and went back to the rear to try to warn cars approaching from that direction; that he had reached a point about 6 feet back of the truck as the appellee's car approached; and that he waved his hand, but that the driver of appellee's car either did not see him or did not pay any attention to him. Appellant contends that all of these matters are uncontradicted, and that there is therefore no evidence to support a charge of negligence on the part of the driver of his truck. We believe that appellant's contention is true, with the exception that there is evidence in the record to contradict the claim of the driver as to the position of his truck with reference to the edge of the pavement and the ditch along the right-hand side of the road. The witness, Vernon Kirkpatrick, who was the driver of appellee's automobile, testified that the left hind wheel of the truck was on about the black mark in the center of the paving, and the right front wheel was on the right edge of the paving. Appellee's witness Dial testified that both rear wheels of the truck were on the pavement, and the left rear corner of the box was right about over the center of the pavement. There was therefore a sharp conflict in the evidence as to the position of the truck, and, as far as the position of the truck was a

matter to be considered in determining the negligence of the driver thereof, it was a question for the jury.

Is the evidence such, however, that the driver of the truck, even though he did not get as far to the right on the shoulder of the road as it was possible for him to go, was nevertheless not guilty of negligence, because of the conditions amounting to an emergency with which he was suddenly confronted? The evidence is undisputed that at the place where the accident occurred there is a dirt shoulder on the right side of the pavement about 4 feet wide, and that at the time of the accident this dirt shoulder was hard. If, when the lights went out on the truck, the driver found himself in total darkness, with no knowledge as to the width or condition of the shoulder of the road, we would have a situation in which it might be very reasonably argued that there was no negligence on his part in stopping his car in the position in which the evidence of appellee's witnesses indicated it was at the time of the accident. The driver of the truck, however, stated that he could see about 300 feet around the corner to the left as he approached the curve prior to the accident; that when the lights went out and his truck became disabled he slackened it up and let it coast off to the side as far as he dared to let it run; that, when the truck stopped, the right-hand wheels were clean off the pavement on the shoulder at the edge of the pavement and the left rear wheel was right on the side of the curb of the pavement; that he could not go off any farther because the truck stopped; that he could not push it; that there was a ditch to the right, and the right-hand wheels of the truck were on the edge of this ditch; that it was just getting dusk, and he could just see to coast off the pavement after the lights went out; that it was light enough so that he could observe houses or objects to the side of the road. This testimony of the driver of the truck would seem to indicate that, without the help of his lights, he could see the width of the shoulder of the road and the ditch adjoining it. It seems to indicate that there was sufficient visibility so that he claims to have coasted off on the shoulder and to the very edge of the ditch. If, however, the visibility was such that he could, after his lights went out, see the width of the shoulder on the road and the ditch adjoining it, the question arises as to whether it was his duty to drive the truck farther off of the pavement and onto the shoulder to the right thereof. Of course, he claims that this is what he did, but the evidence of the

appellee's witnesses is to the contrary. In view of the undisputed evidence as to the width and condition of the dirt shoulder, the evidence of the driver of the truck as to the visibility after his lights went out, and the evidence of appellee's witnesses as to the position of the truck at the time of the accident, it is our opinion that it was within the province of the jury to decide whether the driver of the truck was negligent in not turning his truck farther to the right of the pavement and onto the shoulder of the road.

██ II. Appellant contends that Vernon Kirkpatrick, the driver of appellee's car, was guilty of negligence which contributed to the accident, and he alleges error on the part of the trial court in overruling his motion for a directed verdict in which such contributory negligence was one of the grounds therein stated. It appears in the evidence that the rear end of the truck was painted white; that from the surface of the road to the top of the rear end of the truck was about 10 feet; that there was a red reflector about 5 inches in diameter on each corner of the back end of the truck, that these reflectors were about 4 feet 4 inches from the ground, and that they could be seen with average car lights for a distance of 200 feet from the rear of the truck. The testimony of Vernon Kirkpatrick, the driver of appellee's car, was that, before reaching the curve in the road, he had been driving about 25 to 30 miles per hour, that when he reached the curve he met two cars coming from the opposite direction, and that when he met these cars he slowed down to about 20 miles per hour and turned on his dimmers. All of the evidence shows that the curve referred to is a very slight curve. The evidence is undisputed that the accident occurred about in front of the Ball home and a little west of the entrance thereto. Several witnesses testified that the curve ends some distance east of the entrance to the Ball home, some of the witnesses placing this distance as far as 40 rods. True, the driver of appellee's car says that the accident happened just about the west end of the curve. The evidence that the accident happened west of the entrance to the Ball home and that the curve ends some distance east of the said entrance is, however, not contradicted, and these physical facts would seem to place the scene of the accident some distance west of the curve. If this be true, then the rays from the headlights on appellee's car, if sufficiently bright, should have thrown directly upon and should have illuminated the rear of the truck when the appellee's automobile was some distance behind the truck. Even if this should not be true, the evidence in

regard to the curve is that it is so slight that the rays from the head-lights of appellee's automobile should have made the truck visible when the automobile was still some distance behind it. The driver of appellee's car also testified that he was traveling about 20 miles per hour and had his dimmers on at the time of the accident; that his lights threw about 20 feet ahead when the dimmers were on, and that he did not know how far they would throw ahead when the full light was on; that he did not know whether the automobile could be stopped within 100 or 150 feet when going 20 miles per hour; that he was watching the pavement to see where they were, and could not see very far ahead; that, when the full lights were on, they would throw a distance of 50 feet ahead and light up the entire pavement; and that he was within 12 or 15 feet behind the truck when he first saw it; and that, when he saw the truck ahead of him, he put on his brakes and tried to swing to the left. The evidence further shows that the impact was such that the left-hand corner of the truck crushed the gasoline tank down over the right side of the front seat where appellee was sitting and pinned him in the car, and the car itself became so tightly wedged under the body of the truck that it required two or three men working for about half an hour and the use of a jack and posts to pry the truck body up before the car could be released and the appellee taken therefrom. If, as this evidence shows, the plaintiff's car was being driven at a speed of 20 miles per hour, with lights that would not show objects in front of them when more than 20 feet away, and the driver of said car did not know whether, when going at that speed, he could stop within 100 or 150 feet, it would appear rather difficult to relieve such driver from the charge of negligence under such circumstances.

Appellee cites the cases of Owens v. Iowa County, 186 Iowa 408, 169 N. W. 388; Kendall v. City of Des Moines, 183 Iowa 886, 167 N. W. 684; Spiker v. City of Ottumwa, 193 Iowa 844, 186 N. W. 465; and Dombrenos v. C., R. I. & P. Railway Company, 194 Iowa 1161, 191 N. W. 158, and argues that the holdings in these cases indicate that this court has refused to adopt the harsh doctrine of what is known as the Michigan rule and the rule in the Wisconsin and Tennessee courts. The latest of the cases cited was decided by this court in 1922. In 1929 our legislature (chapter 128) amended section 5029 of the Code of 1927, and as thus amended this section provides that "no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within

the assured clear distance ahead." Apparently, what has been referred to as the Michigan rule has been adopted in the provisions of this statute. The statute above quoted is now the law of this state, and cannot be ignored by automobile drivers or by the courts. This court has construed this statute to mean just what it says. Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569, 573; Harvey. v. Knowles Storage and Moving Co., 215 Iowa 35, 244 N. W. 660. If the driver of appellee's car violated this statute, then he was guilty of negligence. It may be true, as indicated in the Wosoba case, supra, that conditions may arise making it impossible for the driver of an automobile to comply with the statute. In the case before us, as in the Wosoba case, there does not seem to be any circumstance over which the driver had no control which caused him to drive contrary to the statute. There is nothing in the record to indicate that the driver of appellee's automobile was confronted with any sudden emergency not of his own making which brought about a violation of the statute. If there was any such condition which made it impossible for him to observe the statute, he has not pointed it out or offered it as an excuse for such violation. In the Wosoba case, supra, this court said:

"So, in the case at bar, because of the statute above quoted, it was incumbent upon the appellant to so adjust his rate of speed that he could stop the automobile in the assured clear distance ahead. This duty was upon the appellant under all the circumstances, including the event of blinding headlights of a car approaching in the opposite direction."

Under the evidence, in the case before us, the driver of appellee's car was going 20 miles per hour; he did not know whether he could stop within a distance of 100 or 150 feet when going at that speed; he did not see the truck until he was within 12 or 15 feet of it; his lights were dimmed and did not show objects ahead at a distance of more than about 20 feet; his automobile struck the truck with sufficient force to pin it under the truck and require the use of a jack and posts to pry the truck up and the efforts of two or three men working for about half an hour to release the automobile from the truck. He offers no reason to show that it was impossible for him to observe the provisions of the statute. Under these circumstances, we think it appears, as a matter of law, that he was either paying no attention to what was ahead of him, or

that he was operating his automobile at such a speed that he could not bring it to a stop within the assured clear distance ahead. In either case, he was guilty of contributory negligence, and the trial court erred in refusing to sustain the appellant's motion for a directed verdict on that ground.

■ III. Objection is also made by the appellant that the court erred in allowing the plaintiff to amend its petition after the case had been argued and to set up an additional claim of negligence on the ground that "the said defendant and the driver of said defendant's truck were further careless and negligent after defendant's truck had failed, if it did fail to move or to be propelled by its own power, to erect any barrier or to signal approaching cars and especially the car of this plaintiff, but permitted the plaintiff without any notice to drive into and upon plaintiff's car as hereinbefore and after set out." The evidence to which we have already referred in division I of this opinion· shows that the ground wire broke and the engine ceased to operate and the lights on the truck were out without any fault on the part of the driver of the truck. The testimony of the driver of the truck was that he coasted for a short distance, came to a stop, tried his starter, and found that it would not work, and immediately went to the rear of the truck and tried to warn cars approaching from that direction, that he had got about 6 feet to the rear of the truck and tried to stop the appellee's car, but that the driver of the car either did not see him or paid no attention to his warning. There is no evidence to contradict these statements of the driver of the truck and no evidence from which any inference can be drawn to show that they are not true. Under the uncontradicted evidence of the case, therefore, the driver of the truck had no time or opportunity to erect any barrier or to do any more than he did in signaling approaching cars. The court not only allowed this amendment, but instructed the jury on the failure of the driver of the truck to erect such barrier or to signal approaching cars. Appellant contends that the claim of negligence on this account was first raised in the case when such amendment to the appellee's amended and substituted petition was filed. It is true the court offered to permit the appellant to reopen argument and argue this phase of the case to the jury. Appellee acquiesced in this offer of the court. The fact that such an offer was made on the part of the court, and consented to by the appellee's attorney, indicates that this new ground of negligence had not been referred

to by either party up to that time. In the absence of any evidence to support such claim of negligence, and under the circumstances under which the amendment was filed, the appellee should not have been permitted to file such amendment, and the giving of the instruction to the jury in reference to such a claim of negligence was prejudicial error.

IV. Upon the trial of the case, Dr. Wm. E. Cody of Sioux City, Iowa, was called as a witness for plaintiff. Dr. Cody had attended the plaintiff on account of the injuries received in the accident. During the course of his examination, plaintiff's attorney proposed to said witness a hypothetical question. To this the attorney for defendant objected that, in the form in which it was asked, the question did not contain a correct statement of the record, assumed matters not established, and there was no foundation for the question. The court overruled the objection, and defendant alleges that the court committed error in so doing. In his argument upon this point, appellant urges that the question was not a correct statement of the record, and assumed matters not established, because the question assumed that the plaintiff was unconscious for about thirty minutes after the accident happened, and appellant alleges there is no evidence in the record to establish such fact. Appellant cites many cases in support of his contention that a witness should not be allowed to answer a hypothetical question unless there is evidence tending to establish the facts assumed in such question. With this contention of the appellant we have no quarrel. The testimony of plaintiff, however, was that he was pinned in the car for about half an hour, that he did not remember hitting the truck, and did not remember anything after that until he came to after he was taken out of the truck and some men were holding him in their arms. And the witness Kirkpatrick, who was the driver of plaintiff's automobile, testified that the plaintiff was pinned in the car about half an hour, and that he was unconscious when lifted out of the car. There was, therefore, evidence in the record of the fact assumed in the hypothetical question, of which appellant complains, and the court did not err in overruling the appellant's objection to the question.

Other grounds for reversal are set out by the appellant, but, as some of these grounds have already been considered in connection with the propositions already discussed, and as other grounds are such as will probably not arise in a new trial of the case, we

do not deem it necessary to extend this opinion to any greater length in order to consider them.

For the reasons given, the judgment of the trial court will be reversed, and the case remanded for a new trial.—Reversed.

All Justices concur except KINDIG, C. J., who takes no part.