**SWEENEY, Appellee v. SCHNEIDER, Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 6251.   Decided May 24, 1943.

Henry E. Beebe, Cincinnati, and John D. Shields, Cincinnati, for appellee.

August A. Rendigs, Jr., Cincinnati, for appellant.

## OPINION

By ROSS, P. J.

Appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton county, in favor of the plaintiff upon a verdict for $2,500.00.

The facts in this case as far as the same involve the collision of the automobiles of plaintiff and defendant are developed from the testimony of two disinterested witnesses and the plaintiff and defendant.

Columbia Parkway is a wide, laned boulevard running in a general east and west direction in the city of Cincinnati. Kemper Lane is a street which intersects the boulevard in what is commonly known as a "jog". In other words, Kemper Lane, which drops down hill from the north, meets the boulevard and then some fifty feet to the west on the boulevard proceeds to the south. A traffic light is maintained at the first intersection to the east where Kemper Lane meets the boulevard as it drops down from the north. There is a light at the point where it again leaves the boulevard and proceeds south continuing down the hill, on the east side of Kemper Lane and the south side of the parkway.

On the 10th of June, 1941, at about 5:45 P. M., a number of automobiles had passed the point where Kemper Lane dropping from the north meets the boulevard. The traffic light showing green, these cars proceeded past this point at a speed of some twenty-five to thirty-five miles per hour, the latter the permitted speed at this point. All of the cars in question were in the lane of traffic next to the line separating the east and westbound traffic. The driver of the first of these cars wished to turn south or to the left after passing the light, and proceed southwardly across the boulevard into the continuation of Kemper Lane as it descended the hill to the south from the boulevard. Traffic proceeding eastwardly along the boulevard prevented the first car from proceeding immediately across the boulevard to the south and this first car came to a stop, the car behind it stopped, and the car operated by the plaintiff

next following stopped also. What .then happened is best stated in the testimony of one of the distinterested witnesses who was proceeding eastwardly in the lane of traffic adjoining the dividing line between east and west traffic. The driver of this vehicle desired to make a left hand turn, proceeding northwardly up Kemper Lane, and had stopped his truck waiting for the west bound traffic to pass and thus permit him to cross the boulevard from south to north and thence up Kemper Lane. The record contains the following:

"Q. Tell this jury what you saw at the intersection of Kemper Lane and Columbia Parkway this night? What time was it, do you know?

A. About five-thirty or a quarter to six.

Q. What did you see?

A. Here was two cars nearest us, both coming to a normal stop, and down the road a pretty good piece was another car coming at a terriffic speed—

* * *

Q. Tell what happened there.

A. The next thing I heard was the scream of brakes and this man slid into the back of Mr. Sweeney's car, knocking Mr. Sweeney's car into the car in front of Mr. Sweeney.

Q. Did you stop?

A. We made our turn and pulled on Kemper Lane and parked and came back.

Q. Did you see this man there?

A. Yes, 'sir.

Q. Did you talk to him?

A. Yes, sir.

Q. What did he say if anything?

A. Well, I suggested calling an officer, which they generally do in accidents and he seemed to get pretty nervous and said 'It is all my fault and I will assume all responsibility.' I even gave the man my name and address. Mr. Sweeney was sort of nervous and after he got my name and address he was the first gentleman to leave the scene of the accident.

Q. Had the officers gotten there yet?

A. No, no officer arrived.

Q. I want to ask you if you saw any skid marks there?

A. Yes, I did.

Q. Did you measure them?

A. No, but I would say anywhere about—about the length of this room, about thirty-five or forty feet probably.

Q. Where did they lead?

A. Right up to Mr. Sweeney's car and where he hit him. He didn't stop at all, he was still sliding when he hit him.

Q. Do you know either one of these men?

A. I didn't before then, no. Never seen either one of the gentlemen in my life that I can recall."

And another witness, companion of the first in the truck, stated:

"Q. Tell the jury what you saw with your own eyes?

A. I am driving east on the Parkway and traffic going west; in order for me to make a left turn up Kemper Lane I slowed up; I wasn't stopped, but waited for traffic to clear up so I could make a left turn in Kemper Lane and about that time I heard tires screeching and brakes and the traffic in the left lane going west was stopped and this car struck the rear end of the stopped traffic."

The testimony of the plaintiff is to the same effect. The defendant claims that plaintiff stopped his car suddenly with no signal except the flash of a stop light just before the collision and that it did not give him sufficient warning, although he states he was driving at some twenty-five miles per hour, with an intervening space of some twenty feet upon a dry street and on a clear day.

The defendant states:

"Q. Will you tell the jury in your own words what happened?

A. I was following along in the back of Mr. Sweeney's car at a distance of possibly twenty to twenty-five feet and suddenly, without warning whatsoever, Mr. Sweeney came to a sudden stop without signaling, without giving any sort of warning, except that I did see the stop light flash. I attempted to apply the brakes but was unable to stop before I ran into the back end of Mr. Sweeney's car.

Q. What is your best judgment as to how fast you were going at that time?

A. I would say between twenty-five and thirty miles an hour, not exceeding thirty at any time.

Q. That is a thirty-five mile zone at that point?

A. That is right."

In his petition the plaintiff charged that the defendant was negligent, in "that he was driving his automobile without regard to the general and usual rules of the road as above set forth; second, that he failed to have his automobile under control."

No "general and usual rules of the road" are "above set forth", in the petition.

The answer admitted the collision and was otherwise a general denial.

The defendant assigns as error, prejudicial to him, that the trial court included in the general charge the following excerpt therefrom:

"Before the plaintiff is entitled to recover in this case he must prove by a preponderance that the accident and the resulting injuries of which he complains were caused by the negligence of the

defendant, and he must also prove by a preponderance of the evidence that such negligence was the proximate cause of his injuries."

It is asserted that the language incorporates the vice in special charges criticized in **Plotkin v. Meeks, 131 Oh St 493,** and **Binder v. Youngstown Municipal Ry. Co., 125 Oh St 193,** (See: **39 O. Jur. 997)** in that the Court assumes facts to exist concerning which the evidence develops a controversy. The quotation contains a redundant statement of the obligations of the plaintiff to establish that his injuries were proximately caused by the negligence of the defendant. This clause is a part of the general charge and must be considered as it is framed by other parts of the general instruction. **Ochsner, Admr. v. The Cincinnati Traction Co., 107 Oh St 33, Ohio Farmers Insurance Co. v. Cochran, 104 Oh St 427, Ohio & Indiana Torpedo Co. v. Fishburn et, 61 Oh St 608.**

An examination of the charge as a whole shows that the jury could not have been misled by this language into any belief that the negligence of the defendant was other than a controverted issue in the case.

The rule laid down in **Plotkin v. Meeks, 131 Oh St 493,** and **Binder v. Youngstown Municipal Ry. Co., 125 Ohio St 193,** it is to be noted, is applicable to special instructions given before argument at the request of a party.

The defendant makes a like complaint as to language used by the court in charging upon the issue of contributory negligence. What has been said as to the first complaint applies to this instance also. Apparently, (for the language is not quoted in the brief) the portion of the charge of which complaint is made is:

"You will hear the term 'contributory negligence' used during this charge. Contributory negligence is an act or omission on the part of the plaintiff amounting to a want of ordinary care on his part and concurring and corroborating with the negligent act of the defendant as a proximate cause or occasion of the injuries complained of.

"To constitute contributory negligence in law there must be a want of ordinary care on the part of the plaintiff which had a direct connection between the want of ordinary care of the defendant and the resulting injuries."

It is to be noted also that in both of these instances the language used has an abstract quality which would not be present if couched in terms, producing an objectionable, specific direction toward this defendant in particular. The latter definition of the parties is not overlooked, but is not so connected with the particular changes as to lead the jury to a conclusion that the court considered the negligence of the defendant definitely established.

A further complaint is made of the general charge in the use of the following language:

"The law further provides that the drivers of motor vehicles must operate such vehicles on the public roads or highways with due regard for the safety and rights of drivers and occupants of all other vehicles and must not endanger the life or property of any other person while in the lawful use of the roads, and you are instructed that the failure on the part of any driver of a motor vehicle to drive in accordance with this rule of law would constitute negligence."

**Section 12603-1 GC**, provides:

"Whoever operates a motor vehicle on the public roads or highways without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, and so as to endanger the life, limb or property of any persons while in the lawful use of the roads or highways shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined as hereinafter provided."

The effect of the charge is to state to the jury that a violation of the section quoted constitutes negligence. The violation of this section is a misdemeanor.

At page 337 of the opinion in the case of **Makranczy v. Gelfand, Admr., 109 Oh St 325**, it is stated:

"Both of these instructions are based upon the principle of law announced in **Schell v. DuBois, Admr., 94 Oh St 93**, 113 N. E., 664, L. R. A. 1917A, 710:

" 'The violation of a statute passed for the protection of the public is negligence per se, and where such act of negligence by a defendant is the direct and proximate cause of an injury not directly contributed to by the injured person the defendant is liable.' "

See also: **Scott, Admx. v. Hy-Grade Food Products Corp., 131 Oh St 225; Buckeye Stages, Inc. v. Bowers, 129 Oh St 412, 414; Mahoning Savings & Trust Co. v. Kellner, Admx., 131 Oh St 69, 76.**

At page 22 of the opinion in the case of **Werner v. Rowley, 129 Oh St 15**, it is stated:

"The charge of the court is more prolix than necessary and is challenged by defendant, plaintiff in error here, for various reasons. The court read §§12603 and 12603-1 GC, to the jury. It is now contended that, while the court charged that violations of those sections were negligence per se, it did so without explaining the circumstances or defining what was meant by prima facie lawful or unlawful speed. There was no prejudicial error in this respect, since the defendant below did not request a charge upon that feature."

The defendant, however, relies upon the rule pronounced in **Heidle v. Baldwin, 118 Oh St 375,** and reaffirmed in **Times Square Garage Co. v. Spencer, 121 Oh St 77.** Paragraph 4 of the syllabus in the case of Heidle v. Baldwin is:

"4. The duty imposed by the statute upon the driver of a vehicle on the intersecting highway is not a specific requirement to do or to omit to do a definite act but rather a rule of conduct and the rule of per se negligence is not applicable thereto."

These cases construed the so-called right of way statute, §6310-29 GC. It will be noted that this statute is not a penal statute such as the one under consideration. No decision of the Supreme Court is found construing §12603-1 GC, as being merely a "regulatory provision" or as merely incorporating "a rule of conduct." Until such pronouncement, this Court is fully justified in applying the rules to this §12603-1 GC, which are applied in the violation of other penal statutes enacted for the safety of the public.

By such charge the court does not deprive the defendant of his right to have the jury pass upon the issue of fact as to whether he operated his motor vehicle with "due regard" to the rights of others and whether or not he did endanger the lives and property of others.

Again, complaint is made of the construction placed by the court upon the language of §6310-22 GC, which reads as follows:

"Drivers of vehicles before turning, stopping or changing their course shall make sure such movement can be made in safety and shall cause signals to be made of their intention in a way visible outside the vehicle."

The trial court charged:

"The court first wishes to tell you in connection with that section that in considering whether or not a visible signal was made outside of the vehicle that such signal within the purview of that law may be made either by hand or mechanical device, either of an automatic type or an electrical device, and if a driver causes signals to be made of his intention to stop in a way visible outside the vehicle by a hand, mechanical or electrical device, he would be complying with this section of the law."

No fault is apparent in this amplification of the statute which merely requires the giving of some appropriate signal "visible outside the vehicle." The court read the statute. It is to be remembered the plaintiff testified he gave an arm signal also.

Again, the following language of the general charge is criticized:

"Further, I charge you, members of the jury, along with these other rules that I have stated, this rule—it is the duty of the driver of a motor vehicle which is following another motor vehicle and which latter motor vehicle was clearly visible to the driver in the rear, to keep such vehicle at a safe distance from the vehicle in front and to drive same at such a speed as would permit him to stop before colliding with the car in front. If a driver fails to do so he would be considered to be neglgient, unless he proved, of course, that some extraneous power moved him other than the motive power of his own motor and vehicle."

The court here was apparently attempting to state the rule in §12603 GC, and apply it specifically to the facts in the case. This statute also is a penal statute and what has been said hereinbefore as to penal statutes is here applicable to this section, the pertinent part of which reads as follows:

"* * * no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.
* * *
Any person who violates the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be finded as hereinafter provided."

Its violation constituted negligence per se. **Gumley, Admr. v. Cowman, 129 Oh St 36. Skinner v. Pennsylvania Rd. Co., 127 Oh St 69.**

The rule laid down in this section does make it an absolute duty on the driver of the following vehicle to so drive his vehicle as to be able to stop in the "assured clear distance ahead." What is such distance is a question for the jury. The statute did not gain by amplification, but did the court commit error prejudicial to the defendant in so charging is the question. The collision of the plaintiff's and defendant's vehicles was admitted by defendant. The charge left open the question of "safe distance" and "such speed." These were essential questions which the defendant had a right to present to the jury and they were presented by the charge. The vice noted in **Binder v. Youngstown Municipal Ry. Co., 125 Oh St 193,** did not exist in the charge given.

The correct rule is stated in **Smiley v. Arrow Spring Bed Co., 138 Oh St 81.** At page 87 of the opinion, it is stated:

"In this connection, however, this court has specifically held that in order to enjoy the benefit of the legal excuse and to avoid the legal imputation of negligence per se, the motorist must establish that, without his fault, and because of circumstances over which he had no control, compliance with the law was rendered impossible. **Hangen v. Hadfield, supra.**

The composite rule then may be stated as follows:

"To comply with the assured-clear-distance-ahead provisions of §12603 GC, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his motor vehicle and a discernible object obstructing his path or line of travel, unless such assured clear distance ahead is suddenly cut down or lessened, without his fault, by the entrance within such clear distance ahead and into his path or line of travel of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith. Spencer v. Taylor, 219 Mich. 110, 188 N. W. 461; West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301; Steele v. Fuller, 104 Vt. 303, 158 A. 666; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953; Peckinpough v. Engelke, 215 Iowa 1248, 247 N. W. 822. See list of cases in 87 A. L. R. 898."

This duty is manifestly an absolute duty.

In **Higbee Co. v. Lindemann, 131 Oh St 479,** in a per curiam opinion the court say:

"Though the statement was at some length, the essential and controlling facts may be briefly stated. On April 13, 1933, between nine and ten o'clock in the forenoon, while plaintiff was driving her automobile north on Hall avenue in Lakewood in the rear of the truck of the defendant traveling in the same direction, her automobile came into collision with the rear end of such truck, resulting in certain injuries. She had followed the truck a few hundred feet and was driving in second gear. The driver of the truck, without signal or other warning, and without being required to do so by any obstacle in its path, but for the purpose of making delivery of some merchandise, brought it to a stop with its right hand wheels four or five feet from the curb. At the time of the collision and during the progress of her automobile from the intersection of Detroit Avenue, a few hundred feet to the south, the plaintiff 'was at such a distance behind the Higbee truck as that she could have brought it to a stop within the assured clear distance ahead' of her automobile. The brakes of her automobile were in good condition; and immediately upon discovering the stopping of the truck she made every effort to bring her automobile to a stop. There was not room to pass the truck on the right, and she could not pass on the left because of the south-bound traffic.

"The statement discloses either a manifest violation of §12603 GC, by the plaintiff in the operation of her automobile, or that the plaintiff was driving at such speed that she could have stopped within the assured clear distance ahead and, for some unexplained reason, failed to do so. The facts stated were such as to require the

direction of a verdict against the plaintiff. The Common Pleas Court, therefore, did not commit error. It follows that the judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed."

The facts in the instant case clearly show also that any just criticism of this portion of the charge could not have constituted error, prejudicial to the defendant.

The language used by the court "unless he proved", however, ignored the rule that each party is entitled to all the evidence in the case and not merely the facts, "he proved." **Cincinnati Traction Co. v. Williams, 115 Oh St 124. 39 O. Jur. 985.** As there was no attempt on the part of the defendant to rely upon the intervention of any "extraneous power" this error was not prejudicial.

The defendant complains of the action of the trial court in permitting the introduction in evidence of a written statement of a witness in which the witness expresses an opinion that the fault of the defendant was the cause of the collision.

The matter developed in the cross-examination of a witness for the plaintiff. The witness had previously testified in chief that: "He (the defendant) said it was his fault." The defendant desired to impeach the witness and asked him if he had not previously in his own hand writing stated nothing was said by defendant. The witness admitted this. As noted hereinbefore, there was clear evidence that the defendant had admitted the collision was due to his fault. The testimony of the witness in question clearly showed that the collision was solely due to the negligence of the defendant The court did commit error in permitting the introduction of the written statement of the witness expressing an opinion upon the ultimate issue in the case, the negligence of the defendant, but to consider such error prejudicial to defendant in view of the evidence in this case, including the defendant's own testimony would be a direct violation of the mandate to this court contained in §11364 GC.

Complaint is also made that the trial court permitted counsel to question the defendant as to whether he had made any claim against the plaintiff. This also was error, but again, it does not appear in view of the facts established here, such error could be considered prejudicial.

The evidence against the defendant in this case considering its character and source was so overwhelmingly conclusive as to the negligence of defendant and absence of contributory negligence on the part of plaintiff that the errors noted could not have had any effect upon the verdict. This also applies to the claims of misconduct on the part of the court and counsel in bringing into the case the interest of an insurance company.

The final complaint is that the verdict is excessive. The injury to the plaintiff of which he complains involved a sacro-iliac sprain. The serious character of such an injury is a matter of common knowledge. The permanent, though fluctuating charac-

ter is also known. There was substantial evidence sustaining the conclusion that the plaintiff had suffered such an injury. That at times he may have shown normal activity is not at all evidence that the permanent injury does not exist or will not at any time become so severe as to incapacitate the plaintiff from pursuing his usual vocation of a lineman. The amount of the verdict was not, therefore, excessive.

With full cognizance of the errors noted herein, it is the conclusion of the court, for the reasons given, that the judgment of the Court of .Common Pleas must be affirmed.

HILDEBRANT and MATTHEWS, JJ., concur.