FANNIE GOODSON v. WALTER SCHWANDT and FRANK ADAM ELECTRIC COMPANY, Appellants.—300 S. W. 795.

Division Two, December 12, 1927.

*W. H. Woodward* for appellants.

*John F. Maloney, Walter F. Stahlhuth* and *Hensley, Allen & Marsalek* for respondent.

HIGBEE, C.—Plaintiff, the widow of Frank Goodson, basing her action on Section 4217, Revised Statutes 1919, sued for damages for the death of her husband, who was struck and fatally injured on

March 12, 1923, by a truck driven by Walter Schwandt on Seventeenth Street in the city of St. Louis, and died from said injuries a few days thereafter. Plaintiff had a verdict and judgment for $9,000 against both of the defendants and they appealed.

The petition contains several assignments of negligence, but the case was tried on the humanitarian theory.

The defendant Schwandt, an employee of the Electric Company, at about six P. M., on March 12, 1923, was driving a three-quarter-ton truck east on Locust Street. Will Mays and Elmer Ruthsatz, who were also employees of the Electric Company, were in the truck with Schwandt. Will Mays testified as a witness for plaintiff:

"We drove east on Locust Street from the Coliseum, and stopped at Seventeenth Street, even with the building line. . . . A car coming north on Seventeenth Street passed in front of us. When this car passed we blowed the horn and started east. I saw Mr. Goodson. Just as that northbound car got across he stepped off the sidewalk of Locust Street into the street. He proceeded about six feet north into the street and, owing to the fact that there were already two westbound automobiles approaching Seventeenth Street abreast each other, and another pulled around, making three abreast, Mr. Goodson jumped back, and when he did this the left front fender of Mr. Schwandt's truck struck Mr. Goodson, knocking him down. I saw Mr. Goodson before he stepped off the curb. I saw him as he walked up to the corner. At that time Mr. Schwandt's automobile was stopped on the west side of Seventeenth Street. When Mr. Schwandt started to cross Seventeenth Street he blew his horn before starting. At the time Mr. Schwandt's automobile stopped on the west side of Seventeenth Street, the right wheels of his truck were about two to four feet north of the south curb of Locust Street. At the time Mr. Goodson was struck the right end wheels of Mr. Schwandt's automobile were something like two feet from the south curb of Locust Street. The wheels were closer to the south curb on the east side of Seventeenth Street than they were when the machine was parked on the west side of Seventeenth Street. The westbound car turned out of line about eight feet east of the building line, on the west (east) side of Seventeenth Street. When Mr. Goodson stepped off the south curb into the street he was just a little east of the east building line on Seventeenth Street. In my judgment he was about four feet east, or maybe six feet east, of said building line at this time. He did not run. He was walking directly north. Before Mr. Schwandt's automobile struck Mr. Goodson, Mr. Schwandt blew his horn and hollered, 'Look out—look out.' After Mr. Goodson stepped six feet into the street he did not remain there or stand there any time, but jumped backwards and turned. While he was attempting to turn his body, the left fender of the machine struck

him. I could not say which way he tried to turn. Mr. Schwandt blew his horn the second time when the front end of his machine was about even with the east building line on Seventeenth Street and about the time that this other car pulled out of line from the west. Mr. Goodson at this time was about four feet in front of Mr. Schwandt's car, which was moving about six or eight miles an hour."

The evidence also showed that the evening was clear and the surface of the street was dry and that a truck going at six miles per hour could have been stopped with the means at hand within six to eight feet and at eight miles an hour in ten feet. The width of Locust Street at the point of collision, between the curbs, is 42 feet and 4 inches. The evidence of Schwandt and Ruthsatz, who testified for the defendants, is substantially the same as that of Will Mays and affords no additional aid to plaintiff's case.

At the close of plaintiff's case and again at the close of all the testimony, the defendants each offered a separate demurrer to the evidence, which was overruled.

It is clear that at the instant Goodson discovered he was in danger of being run over by the third automobile, he was out of the path or course of the truck. He became confused, suddenly jumped back towards the south, and was instantly struck by the corner of the truck's left fender. His jumping back was the proximate cause of the collision and of his injuries. We think the evidence for the plaintiff clearly shows that the injury to her husband was purely accidental and unavoidable by the defendants.

As said in Rollison v. Railroad, 252 Mo. 541, 160 S. W. 994: "To predicate negligence on two seconds of time is in and of itself a monumental refinement. We cannot adjudicate negligence on such pulse beats and hair-splitting, such airy nothings of surmise."

And in Markowitz v. Railroad, 186 Mo. 359, 85 S. W. 351: "It requires more than the showing of a mere possibility that the accident might have been avoided in order to bring a case within the humanitarian doctrine announced in Kelley v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678."

The court erred in overruling the demurrers to the evidence and the judgment accordingly is reversed. *Davis* and *Henwood, CC.*, concur.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is approved by the court. *Walker* and *Blair, JJ.*, concur; *White, P. J.*, concurs in the result.

On Motion for Rehearing.

HIGBEE, C.—The motion challenges the statement in the opinion that "at the instant Goodson discovered he was in danger of being

run over by the third automobile, he was out of the path or course of the truck, he became confused, suddenly jumped back toward the south and was instantly struck by the corner of the truck's left fender.''

The motion asserts that Goodson never got further than six feet from the south curb of Locust Street, while the left side of the truck was eight or ten feet from said curb, as said truck approached from a point more than thirty-five feet away; that Goodson was in the path of defendant's truck and in danger therefrom at the time he moved or jumped and had been in said position of danger while the truck ran the aforesaid distance toward him, and that the truck could have been stopped within six feet.

The opinion quotes in part the testimony of Will Mays, the only eye witness offered by plaintiff as to the facts of the accident. Further on Mays testified:

''I saw Goodson about six or eight feet from the curb, and several feet east of the east curb line of Seventeenth Street. Mr. Schwandt was also looking ahead. At the time I saw Mr. Goodson six feet or so from the south curb line of Locust Street, he had cleared the path of Mr. Schwandt's machine. Mr. Goodson was at that time to the left of Mr. Schwandt's car. There were two cars abreast at this time; and the third car came around, and Mr. Goodson got afraid and jumped back and Mr. Schwandt's left fender struck him. It was a sudden jump. . . . When the third car came around, Mr. Goodson was to the front and to the left, and when the third car came on top of him he jumped back.''

Reading this in connection with the testimony of the witness quoted in the opinion, it is apparent that when the witness stated Goodson ''proceeded about six feet north into the street,'' he was merely estimating the distance Goodson walked from the curb into the street; the other statement is definite and distinct, that ''at the time I saw Mr. Goodson six feet or so from the south curb line of Locust Street, he had cleared the path of Mr. Schwandt's machine. Mr. Goodson was at that time to the left of Mr. Schwandt's car.''

There is no escape from the conclusion that, on the testimony of plaintiff's witness as to the accident, Goodson had walked directly north into Locust Street until he had cleared the path of Schwandt's car and was to the left of it and was out of danger of being struck by it when, on account of the sudden movement of the third car going westward, he became alarmed, suddenly jumped backward, and was struck by the left front fender of Schwandt's truck. This is the testimony of plaintiff's witness, and it is corroborated by the testimony of the two witnesses for the defendants who were in Schwandt's truck at the time. The evidence precludes the theory that Schwandt failed to exercise diligence to avoid striking Goodson after his peril was or should have been discovered.

Respondent submitted the case by instructions to the jury solely on the last chance or humanitarian doctrine; that is, that Schwandt negligently failed to stop the truck after he could have seen that said Goodson was in a position of peril. The defendants offered separate demurrers to the evidence at the close of plaintiff's case and again at the close of all the evidence. These demurrers were overruled. Thereafter the court gave defendant's Instruction 8, which reads:

"The court instructs the jury that if you find and believe from the evidence that at the time immediately before the accident when the car which Schwandt was operating approached Frank Goodson, if you so find, the said Frank Goodson was to the left and clear of the path of the truck which Schwandt was operating at the time, if you so find, and that Frank Goodson suddenly jumped into the path of the eastbound truck in question in this case, if you so find, and at the time he first came into a position of danger it was too late for the driver to have prevented the accident, if you so find, and if you further find and believe from the evidence, that his act in so doing, if any, was the sole cause of the accident which caused his death, then plaintiff cannot recover, and your verdict must be for the defendants."

It is contended that by submitting the case upon the humanitarian doctrine, appellants are estopped to say there is no evidence warranting the submission of the case on that theory. Counsel cite Torrance v. Pryor, 210 S. W. 430; see, also, State ex rel. v. Allen, 308 Mo. 490.

In addition to pleading the humanitarian theory, the petition assigned as negligence that the defendants operated the truck at an excessive and dangerous rate of speed; failed to maintain a watch ahead of the motor truck; negligently failed to stop said truck or slacken its speed as it approached Goodson and failed to warn him of the approach of the truck.

It is contended that respondent made a submissible case on the last-chance doctrine or humanitarian theory, but it is not claimed that a scintilla of evidence was offered in support of any other assignment of negligence; in fact, they were disproved by the plaintiff's evidence, as well as by all the evidence in the case. It was shown by all the evidence that Goodson was out of the path of the truck and that he suddenly jumped backward and was struck by the left front fender of the truck. This fact put plaintiff out of court on any theory of the case. Therefore, when the general demurrers were offered, the court was advised that the defendants claimed that no case was made under the humanitarian doctrine, since plaintiff's evidence affirmatively disproved all other assignments of negligence. In these circumstances there can be no question that the defendants

may urge their demurrers on appeal. As said in the Torrance case, 210 S. W., top col. 1, p. 433:

"This, for the reason that, after defendant has made his point clear, he is not estopped by the theory contained in his other instructions, which theory is forced upon him by the action of the court. To illustrate, if plaintiff's case is founded upon several alleged acts of negligence, and defendant, by demurrer, challenges the sufficiency of the evidence as to one of the grounds of negligence, it should not be said that he is precluded from asking instructions on the theory adopted by the court in overruling the demurrer. To so hold would force the defendant to stand upon his demurrer before the jury. But the supposed case is not this case. Here the demurrer challenged the whole case, *and the evidence upon all of the several alleged grounds of negligence.* In overruling such a demurrer, the court does not indicate its theory upon any particular ground of negligence." (Our italics.)

As heretofore stated, it was distinctly and definitely proved by plaintiff's witness that while Goodson was out of the path and to the left of defendant's truck, he suddenly jumped back and was struck by the left front fender of the truck. This was the proximate and sole cause of his death. There was no proof offered to sustain any assignment of negligence; in fact, plaintiff's evidence disproved all of them. But if there had been proof to support other averments of negligence, the fact that Goodson suddenly jumped back and was struck by the fender and so sustained injuries from which he died, defeated plaintiff's cause of action. Hence the reason for the rule applied in the Torrance case had no application to the facts in this case. We think the motion for rehearing should be overruled and it is accordingly so ordered. *Blair* and *Walker, JJ.,* concur; *White, P. J.,* absent.