J. W. Schwind, Jr., Administrator, Appellant, v. I. K. Gibson et al., Appellees.

No. 42268.

May 14, 1935.

Rehearing Denied September 27, 1935.

James J. Lamb, F. J. MacLaughlin, and Lane & Waterman, for appellant.

A. H. Sargent, D. C. Hutchison, and Deacon, Sargent, Spangler & Hutchison, for appellees.

KINTZINGER, J.—The question before us is the correctness of the lower court's ruling in directing a verdict in favor of defendants. In sustaining this motion, the lower court held as a matter of law (1) that plaintiff failed to establish any negligence on the part of the driver of defendant's truck, (2) that the proximate cause of the injury and death was not any negligence of the driver of defendant's truck, and (3) that plaintiff's decedent was guilty of contributory negligence as a matter of law.

■■■ It is the settled rule of law in this state that in the consideration of a motion for a directed verdict, the appellant is entitled to have the evidence considered in its most favorable light to him. Robertson v. Carlgren, 211 Iowa 963, 234 N. W. 824; Hamilton v. Wilson, 240 N. W. 685; Holderman v. Witmer, 166 Iowa 406, loc. cit. 409, 147 N. W. 926.

The principal allegation of negligence consists in allowing the truck in question to remain standing or parked across the entire right side of the highway without lights as required by statute. It is contended by appellant: (1) that there was sufficient evidence of defendant's negligence to take this question to the jury; (2) that the negligence of the defendant was the proximate cause of the collision resulting in decedent's death; and (3) that there was sufficient evidence on the question of plaintiff's contributory negligence to take that question to the jury.

A review of the evidence is necessary for a determination of the question raised. The evidence shows without dispute that the car in which decedent was riding as a guest collided with a truck belonging to the defendant, standing upon paved high-

way No. 13 at the intersection of a dirt road. On December 20, 1931, one Mr. Fleming and his wife invited Mr. and Mrs. Koppes to accompany them on a trip to Mrs. Fleming's relatives near Central City, Iowa. Mr. Fleming had the use of, and was in sole charge and control of, a two-door sedan automobile, owned by his employer, and was the only person operating it on the entire trip and at the time in question. He and Mr. Koppes occupied the front seat, and Mrs. Fleming and Mrs. Koppes with her two year old daughter occupied the rear seat of the car at the time in question. They took another route in going to Central City that day, but returned on highway No. 13. When they reached a point about a mile south of the Linn County Poor Farm on highway No. 13, where it is intersected by an east and west dirt road, the car in which plaintiff was riding skidded into and collided with defendant's truck standing on No. 13. Highway No. 13 runs north and south, and is perfectly straight with only a slight grade toward the intersection from a point about 1,000 feet northerly therefrom. The dirt road crossing it runs east and west. The collision happened at about 5:35 p. m. It was then after dark, and more than a half hour after sunset.

■■■ There is a dispute as to the position of the truck just before and at the time of the collision. Appellant claims it was standing entirely across the right half of the road in a southwesterly and northeasterly direction with the rear corner extending over the center line of the pavement. Defendants claim that both right wheels were on the shoulder of the road about two feet off the west edge of the paving. There was a sharp conflict in the evidence on this question, and its determination was properly a question of fact for the jury. Viewing plaintiff's testimony in its most favorable light to him, the jury would be warranted in finding that the entire truck was standing across the west side of the paving in a diagonal direction with the rear left corner extending over the center line of the paving.

I. The first question for determination is whether or not there was any evidence tending to show any negligence on the part of defendant. The negligence alleged is: (1) In permitting the truck to remain standing and parked on the traveled portion of a paved highway without displaying any rear red light as required by statute, later than one-half hour after sunset and earlier than one-half hour before sunrise; (2) in permitting the truck to remain without lights on a hard-surfaced high-

way outside the limits of a city or town, with no artificial lights on the highway to indicate the presence of the truck thereon; and (3) in failing to give warning of the presence of said unlighted truck by placing a proper light near it.

Section 5044 of the Code of 1931 provides that: "All motor vehicles in use on the public highways * * * shall, during the period of from one-half hour after sunset to one-half hour before sunrise, display two or more white * * * lights, * * * on the forward part of said vehicle, * * *."

Section 5045 provides: "Such motor vehicle when in use or parked upon or immediately adjacent to the traveled portion of the highway shall also display on the rear a lamp so constructed and placed as to show a red light from the rear. * * *"

Section 5054 provides: "No person shall, * * * from one-half hour after sunset to one-half hour before sunrise, permit a motor vehicle, * * * to stand upon the paved portion of any hard surfaced highway outside of the corporate limits of any incorporated city or town with the rear light extinguished unless said highway is artificially lighted, at the place where the vehicle is located, to such an extent as to clearly indicate the presence of said vehicle. A violation of this section shall constitute a misdemeanor and be punishable by a fine * * *."

The principal ground of negligence alleged is defendant's failure to have the proper lights upon his truck while it remained standing or parked upon the highway. The truck in question was standing upon primary highway No. 13 between one-half hour after sunset and one-half hour before sunrise, outside the corporate limits of any incorporated city or town, at a place where the road was not sufficiently lighted to disclose the presence of the truck. A failure to comply with the foregoing statutes is negligence per se, and a violation thereof would render a person liable for injuries resulting therefrom unless he has shown a legal excuse for a failure to comply with such statutory requirements. Such a legal excuse has been held to be:

"(1) Anything that would make it impossible to comply with the statute or ordinance. (2) Anything over which the driver has no control * * * (3) Where the driver * * * is confronted by an emergency not of his own making, and by rea-

son thereof he fails to obey the statute. (4) Where a statute specifically provides an excuse or exception." Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, 554; Kimmel v. Mitchell, 216 Iowa 366, 249 N. W. 151; Kadlec v. Johnson Construction Co., 217 Iowa 299, 252 N. W. 103; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822.

The evidence shows without dispute there was nothing wrong with the lighting system on defendant's truck. There was evidence tending to show that the truck became stalled because of an overheated engine. This, however, would not excuse a failure to have proper lights if the absence of lights was not caused thereby. There is testimony tending to show that after the collision with two cars, the driver of the truck turned on the lights just before removing the truck from the paving. Defendants not only contend that the lighting system was in good working order, but that the lights upon the truck were all lit before and at the time of the collision.

If the evidence is conflicting as to defendant's failure to have the truck properly lighted, that question becomes one for the jury. Appellant contends that the lights were not lit when decedent's car approached the intersection, and appellees contend they were. Because of the serious controversy between counsel on this point, we set out some of the testimony offered by appellant in relation thereto:

William Fleming, the driver of the car in which plaintiff was riding said:

"Q. Now, Mr. Fleming, I will ask you to state whether or not at the time your car collided with the truck, whether the truck had any lights on it? A. It did not.

"Q. As you approached the truck, Mr. Fleming, were you in a position to observe the rear end of it? A. Yes.

"Q. I will ask you to state whether or not a red light was visible on the rear end of that truck? A. There was not.

"Q. If you know I will ask you to state whether or not there were any lights on that truck? A. No, there wasn't."

Mr. Koppes, decedent's husband, who was riding in the front seat with Mr. Fleming, said:

"Q. Now, Mr. Koppes, as you approached the truck, and at the time you first observed it, as you have testified, I will ask

you to state whether or not you were in a position to see the rear end of that truck? A. Yes, sir.

"Q. I will ask you to state if you know whether or not there were any red or other lights displayed on the rear end of that truck? A. There were not.

"Q. Now, Mr. Koppes, I will ask you to state whether or not you observed any lights of any kind on that truck at that time? A. I did not."

The evidence shows that dirt and mud had been tracked onto the pavement from the intersecting dirt road making the pavement slippery and greasy for some distance on each side of the intersection. It also tends to show that Mr. Fleming and Mr. Koppes did not notice the truck on the highway until within 60 or 80 feet therefrom, and that they did not notice the slippery condition of the pavement until the brakes were applied immediately thereafter. The evidence also shows that immediately after discovering the truck, Mr. Fleming, the driver, attempted to pass around it by turning to the left, but owing to the slippery condition of the pavement, he lost control of his car, and collided with the left rear corner of the truck. It struck Fleming's car in the center, and caused it to cave in at the middle, bound off, and turn completely around, reversing its direction.

The evidence further shows that a few minutes after the collision a second car coming from the north also skidded into and collided with the rear of defendant's truck. Mr. Detlefson, the driver of that car, said:

"Q. I will ask you to state whether or not you observed any lights on that truck? A. There were no lights."

The witness Bradke, who was with him, said:

"Q. When you first saw the truck across the highway were there any lights on the truck? A. Not that I noticed.

"Q. And you don't recall that there were no lights there, either, do you? That is, you wouldn't tell this jury now, when you first saw that truck that there were no lights burning on it, would you? A. Sure, there was no lights burning."

Before the collision, the driver of the truck and his brother drove east on the dirt road to deliver some empty milk cans about a mile easterly. After going about a half mile the road

became so muddy that the brother took the empty cans the rest of the way on foot, and the driver backed his truck up to the intersection. The driver and his brother testified that all lights were burning as the truck went down the road and as it returned. When the driver reached the intersection, he backed the truck onto the highway and drove it south to a point on the intersection, where he claims the truck stopped because the engine became overheated. The truck driver said the truck remained at a standstill at that place for about eight minutes prior to the collision; that he knew the pavement was a much traveled highway; and that he made no effort to start the engine during that time. When he attempted to start the engine after the collision, it was apparently in good order, and he had no trouble moving the truck without making any repairs.

The driver testifies that his lights were burning and in good condition while the truck was standiing at the intersection. He is the only witness, however, who testified that the lights on the truck were lit during that time just prior to the collision. His testimony, however, was contradicted by plaintiff's witnesses, as hereinabove set out.

The driver also testified that he walked up the road flagging the Fleming car as it approached. This, however, is also contradicted by Fleming and Koppes, who denied seeing the driver on the roadway, and testified that immediately after the collision they saw the truck driver approaching them from the front end of the truck, and that one of them then told him to warn another car approaching from the north.

From the record in this case the jury was warranted in finding that the pavement was perfectly straight; that both Mr. Fleming and Mr. Koppes were looking ahead; that the truck occupied the entire right side of the pavement with the rear corner extending over the center line; that there were no lights on the truck; that the truck was not seen by any of the occupants of the Fleming car until it came within 60 or 80 feet of the truck; that if the truck was properly lighted, it could have been seen in time to have enabled the driver of the Fleming car to cross to the left side of the paving further north in time to avoid the collision.

It is the well-settled law of this state that where there is a conflict in the evidence as to the existence of any negligence, that question becomes one for the jury. We are constrained to

hold that there was a sufficient conflict in the evidence on the question of defendant's negligence in this case to take it to the jury.

■■■ II. Appellees contend that the proximate cause of the collision and decedent's death was the negligence of the driver of her car in traveling at such a rate of speed that he could not stop within the assured clear distance ahead. There is evidence tending to show that the Fleming car was traveling thirty or thirty-five miles an hour; that the occupants of the front seat did not observe the truck until they came within 60 or 80 feet of it; and that the car could have been stopped within that distance but for the unexpected slippery pavement at the intersection. Both ladies in the rear seat were killed, and there is no evidence that they ever saw the truck.

The evidence also tends to show that while it had rained some during the afternoon, the sun also shone, and that, with the exception of a few spots between Central City and the point of the collision, most of the pavement was dry. They had not traveled over that road on the way to Central City, and the driver knew nothing about the slippery condition at the intersection until they reached it. The decedent had never been over that road before, and none of the occupants of the car knew anything about its muddy condition until after they noticed the truck. It was then too late, and while attempting to pass around it, the driver lost control of his car, which skidded into the corner of the truck.

If this were an action between the driver of the car and the defendant, it might be contended that he was guilty of contributory negligence in failing to stop his car within the assured clear distance ahead, unless he showed a legal excuse. After the truck was first seen by the driver of the car, it was impossible to stop or avoid the collision, because of the slippery condition of the pavement. From the evidence introduced, the jury might well find that it was impossible for the driver, Fleming, to comply with the statute, because of conditions over which he had no control, and because he was confronted by an emergency not of his own making; by reason of which he would be relieved from a strict compliance with the statute. Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822; Kimmel v. Mitchell,

216 Iowa 366, 249 N. W. 151; Kadlec v. Al. Johnson Construction Co., 217 Iowa 299, 252 N. W. 103.

■■■ But even if the driver was guilty of negligence which is not conceded, his negligence would not relieve the defendants from their negligence, if it proximately caused or contributed to the collision. The driver of defendant's truck was on the intersection in question. He must have known the muddy condition of the pavement, and if his car was unlighted while parked on the highway, he was guilty of a violation of the statute; and in the absence of a legal excuse, it would necessarily follow that he was guilty of negligence. It will not do to say *as a matter of law* that his negligence in permitting his truck to stand upon the pavement without lights was not a proximate cause of the collision in question. That question, under the facts in this case, is necessarily for the jury. Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 243 N. W. 561; Bell v. Brown, 214 Iowa 370, 239 N. W. 785; Buchanan v. Hurd Creamery Co., 215 Iowa 415, 246 N. W. 41.

Section 5045 of the Code of 1927 was held inapplicable to vehicles standing on the highway if not *"in use"*. Leete v. Hays, 211 Iowa 379, 233 N. W. 481. Section 5045 of the Code of 1931, however, broadened the former statute to include vehicles *"parked"* on the highway. The statute now reads: "Such motor vehicle when in use *or parked upon or immediately adjacent to the traveled portion* of the highway," etc. (Italics ours.) This amendment was no doubt enacted in recognition of the fact that an unlighted truck *parked* on the highway is just as dangerous as an unlighted truck *moving* on the highway, and it now applies to both.

It is the settled rule of law in this state that where the evidence shows that an injury results from the negligence of two agencies, the question of proximate cause is peculiarly one for the jury. Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Duncan v. Rhomberg, 212 Iowa 389, 236 N. W. 638; Kuhn v. Kjose, 216 Iowa 36, 248 N. W. 230; Johnson v. McVicker, 216 Iowa 654, 247 N. W. 488.

■■■ It is also the settled rule of law in this state that the negligence of a driver of an automobile cannot be imputed to a guest riding in the car who has no control or right to control the operation thereof. Wagner v. Kloster, 188 Iowa 174, 175

N. W. 840; Waring v. Dubuque Electric Co., 192 Iowa 1240, 186 N. W. 42; Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 243 N. W. 561; Kuhn v. Kjose, 216 Iowa 36, 248 N. W. 230. The evidence clearly tends to show that the decedent was riding as a guest in the Fleming car, that the entire charge and control thereof was in the driver, Fleming, and that the decedent had no charge or control whatever over the car or its driver. Whether or not the driver of the car in which decedent was riding was guilty of negligence in failing to have his car under proper control, and whether or not such negligence was the sole and proximate cause of the collision, was for the jury. Whether or not defendant's negligence was the proximate cause of the collision was also for the jury.

III. The only question left is that of decedent's contributory negligence. It cannot be seriously urged that she was guilty of contributory negligence as a matter of law. There was evidence tending to show that the car was being driven at a speed of from thirty to thirty-five miles an hour on a paved highway. This was not such an excessive speed on a country highway that it required a protest from her. The decedent was seated in the rear seat with her baby on her lap. There was no communication between the occupants of the front seat and decedent after they passed the county poor farm about a mile north of the scene of the accident. Decedent knew nothing about the slippery condition of the pavement at the intersection. Most of the pavement was dry between Central City and the intersection in question. Neither the driver nor Mr. Koppes knew anything about the slippery condition of this roadway at the intersection until after they saw the truck on the road ahead. The driver immediately applied the brakes and attempted to pass around the truck by turning to the left. In so doing his car skidded, he lost its control, and it collided with the truck.

It is the settled rule of law in this state that whether or not an invited guest, in an automobile over which he has no control, is guilty of contributory negligence is peculiarly a question for the jury. Cram v. City of Des Moines, 185 Iowa 1292, 172 N. W. 23; Bradley v. Interurban Ry. Co., 191 Iowa 1351, 183 N. W. 493; Waring v. Dubuque Electric Co., 192 Iowa 1240, 186 N. W. 42; Williams v. Mason City & Ft. Dodge Ry. Co., 205 Iowa 446, 214 N. W. 692; Stilson v. Ellis, 208 Iowa 1157, 225 N. W.

346; Wheeler v. Peterson, 213 Iowa 1239, 240 N. W. 683; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 243 N. W. 561; Rogers v. Lagomarcino-Grupe Co., 215 Iowa 1270, 248 N. W. 1.

There is evidence in this record tending to show that the driver of the car did everything that was humanly possible to avoid the collision after discovering the truck on the highway, but owing to the slippery condition of the pavement the collision occurred. The decedent could have done no more to avoid the collision. The question of whether or not her position in the·car could have enabled her on this dark night to have assisted the driver to avoid the collision was clearly for the jury.

In discussing the duties of an occupant, of the rear seat under somewhat similar conditions, this court in Bradley v. Interurban Ry. Co., 191 Iowa 1351, loc. cit. 1353, 183 N. W. 493, 494, said:

"With the first proposition that the invited guest or passenger is not absolved from his obligation to use reasonable care for his own safety, there is no room for dispute, but this is as far as the court can keep step with counsel. The leap from the statement of duty of reasonable care for one's own safety to the conclusion as a matter of law that the invited guest is negligent if he fails to see an impending danger in time to interfere and prevent it is entirely too far. The question as to what is reasonable care in such emergency is peculiarly a question for the jury. Within reasonable limits the invited passenger in an automobile may reasonably and lawfully rely on the skill and judgment of the driver. He cannot physically interfere with the driver's control of the car without peril of disaster. He may, under proper circumstances, sound an alarm, if he sees danger ahead of which the driver seems oblivious, but even then he must still to some extent place his reliance upon the driver to avoid it. There is no rule of law which obliges him to forcibly seize the steering wheel and wrest it from the hands of the owner, or to jump from the rapidly moving vehicle to certain injury or death. The appearance of danger of this character in almost every case comes in an instant of time, the peril is immediate, imminent, and if a collision occurs, the destruction is accomplished in a twinkling. The evidence in this case shows that the plaintiff had no acquaintance with the crossing or its surroundings, and did not know of its existence until just as

the car reached the track; that he was riding in the middle of the car, his view to the front being necessarily obscured by the driver and another person sitting in front.''

We do not mean to be understood as holding that a guest in an automobile may not, under certain circumstances, be guilty of contributory negligence as a matter of law, but under the facts in this case, we believe this question was for the jury.

For the reasons hereinabove stated, and viewing plaintiff's testimony in its most favorable light to him, we are constrained to hold that the lower court erred in directing a verdict against plaintiff, and the judgment entered by it is therefore hereby reversed.—Reversed.

ANDERSON, C. J., and all Justices concur.