Argued January 8; reversed February 4; rehearing denied
March 11, 1941

# HAMILTON *v.* FINCH
(109 P. (2d) 852, 111 P. (2d) 81)

158

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK and RAND, Associate Justices.

*Frank S. Senn*, of Portland (Senn & Recken, of Portland, on the brief), for appellant.

*Arthur Prag*, of Portland (Hoy & Prag, of Portland, on the brief), for respondent.

LUSK, J. The plaintiff, a man 65 years of age at the time of the accident with which this case is concerned, was injured while a pedestrian by coming into collision with an automobile driven by the defendant. He sued for damages, charging the defendant with various acts of negligence in the operation of the automobile and recovered judgment from which this

appeal is taken. The principal assignments of error are based upon the circuit court's orders denying the defendant's motions for a judgment of involuntary nonsuit and for a directed verdict.

The accident occurred on December 31, 1938, at about 11:30 p. m. at the intersection of Foster road with Southeast 88th Avenue in the city of Portland. Immediately before the accident the plaintiff had been a passenger in a public bus, which was eastbound on Foster road. When the bus reached 88th Avenue it stopped to discharge passengers and the plaintiff got off. After waiting for the bus to proceed the plaintiff started to cross Foster road, which is approximately fifty feet wide. That street runs in a generally northwesterly and southeasterly direction, while 88th Avenue runs in a general northerly and southerly direction, so that the streets intersect one another at about a forty-five degree angle. It will be convenient, however, to refer to Foster road as though it ran due east and west. Eighty-eighth Avenue, as it intersects Foster road on the south, is some distance west of 88th Avenue as it leaves Foster road on the north. According to the plaintiff's testimony, this jog, as it is called, is about the width of the street.

The plaintiff walked at an ordinary pace as far as the center of Foster road, which is marked with a yellow stripe painted on the pavement. When he reached this point he stopped to permit an automobile, which was approaching him on Foster road from the east, to pass. When this automobile was about thirty or forty feet from the plaintiff it suddenly changed its course in his direction, and the plaintiff, to avoid the impending danger, moved rapidly backwards in the direction from which he had come and collided

with the automobile driven by the defendant, which, at the time, it was proceeding in an easterly direction on the south side of Foster road.

The sole allegations of negligence in the complaint are:

"That said defendant was driving his said auto-mobile at a high and dangerous rate of speed and that although he was able to see, and did see and observe, the erratic driver approaching from the other direction hereinabove mentioned, and although the plaintiff was plainly visible to him at and near the center of said highway, and notwithstanding that he had ample time to have slowed his motor vehicle to a speed enabling him to stop the same, and notwithstanding the fact that he had ample space to pass with safety to the south of said plaintiff, said defendant drove his automobile in such a negligent manner and failed to have the same under control to such an extent that he struck the plaintiff * * * "

The grounds of the motion for nonsuit and directed verdict are: First, that there was no evidence of negligence on the part of the defendant; second, that the plaintiff was guilty of contributory negligence. We shall consider the first ground.

The only witnesses to the accident who testified were the plaintiff himself and the defendant and four or five persons who were at the time passengers in the defendant's automobile.

The plaintiff testified that the bus stopped to discharge passengers on the west side of 88th Avenue; that he alighted from the front end and remained on the sidewalk or in the street until the bus had gone on when he started to cross Foster road to the north in the pedestrian lane. He testified:

"A Well, I started across, I looked both ways and I could see no car coming from the west, and I got

about two or three feet from the center line, I saw this car coming from the east, coming pretty fast. I didn't want to start across ahead of it so I waited for it to go by. It got within about thirty or forty feet of me and swung toward me and I stepped back out of its way and stepped into this oncoming car I never seen.''

He estimated that he stepped back not over five or six feet. He said that he did not go beyond the center line; he at no time saw the defendant's car and did not know of its presence in the street until it hit him. On cross-examination he testified that he walked to the center line of Foster road before stopping, and that when he stepped back he did so very rapidly.

The plaintiff suffered a comminuted fracture of the right leg. There were two breaks in the tibia, and there was a section of that bone that was broken loose at both ends and angulated. The small bone was also broken.

Riding in the defendant's automobile at the time of the accident were his wife and his wife's father, Ira W. Slanker, who were on the front seat; and on the back seat a young lady named Agnes Smith, Earl Dickerman, and apparently one other person whose name the record does not disclose. All those named testified.

The defendant, after stating that he turned into Foster road at Southeast 72nd Avenue, described the happening of the accident as follows:

''At the time of the bus stopping and pulling away we were about a block or a block and a half of him when the bus was pulling out, and Mr. Hamilton had crossed the road, crossed the yellow line, and he crossed the line aways and we were about abreast of him when he turned suddenly back, and he was about, Oh, I should judge maybe ten or eleven feet away from us, he ran with his head down, watching the other car, and I can't say positively, but I think his head hit the hood of the

car and his knee the fender, because the hood was dented also. But at the time he ran across, he was watching the other car, with his head down, and he ran right into the car. I saw him just before he hit the car, and I applied the brakes and swerved to the right immediately. Well, I pulled right up over there at the curb, on the gravel part by the curb, just beyond the intersection, and we got out and helped carry Mr. Hamilton over to that corner, and I went down to the filling station a few blocks further down and called an ambulance. Then I came back and the police came shortly afterwards.''

The defendant further testified that he saw the plaintiff walk across the street and that the plaintiff passed about six feet beyond the yellow line; that the defendant's car was just a little back from the plaintiff when he started running, and that the minute the plaintiff started running he, the defendant, slammed on the brakes and turned to the right. He estimated that he stopped his car in about a car's length. He said that he was stopping at the time of the collision, that the plaintiff came in contact with the fender and the hood on the driver's side of the car. No part of the defendant's automobile passed over the plaintiff.

On cross-examination the defendant testified that he must have been about two and a half blocks away from the bus at the time that it stopped at 88th Avenue, and about a block or a little better than a block away at the time that Mr. Hamilton started to cross the street. He saw the plaintiff walking at an ordinary pace, and, when the plaintiff started towards him, the defendant was about fifteen feet from the plaintiff at an angle. His car was not opposite the plaintiff at the time, but, as he put it, ''just a little ways this side of him'', by which we understand that the defendant

meant that the automobile was a short distance to the west of the plaintiff. He said that he was driving on his own right-hand side of the Foster road about three feet from the yellow line, and that by the time the collision occurred he had turned probably two feet to the right. He swore that at the time he applied his brakes his speed was around twenty miles an hour. He saw the lights of the car approaching from the east, but did not see it turn towards the plaintiff. The plaintiff, he said, was running towards his car but facing the other car, watching it as he ran. He corroborated the plaintiff's testimony that the east bound automobile was going at a high rate of speed.

The evidence shows that it was a clear night with good visibility, but the pavement was wet.

Mrs. Finch, the defendant's wife, was seated between her husband and her father in the front seat of the Ford. She likewise saw the bus stop, and said that it was about a block away at the time. She saw the bus start up again and the plaintiff cross the street. She said that the plaintiff walked about four feet the other side of the yellow line before stopping, and that "all of a sudden he just turned around and ran back and ran into the side of our car." She estimated the speed of the automobile before the impact at about twenty miles an hour. She said that the defendant slowed the car down when he saw the plaintiff coming back towards them. On cross-examination she testified that the defendant's car was about a block from the bus when it started up after discharging its passengers at 88th Avenue. She did not remember the car coming from the opposite direction, and was unable, so far as the record shows, to estimate the distance the plaintiff was from them at the time he

started back. The testimony of Ira W. Slanker, the defendant's father-in-law, who was sitting on the right side of the front seat of the automobile at the time of the accident, of Agnes Smith and of Earl Dickerman, who were in the rear seat, does not differ materially from that of the defendant and the other occupants of the car. Dickerman estimated that the automobile was between ten and fifteen feet away from the plaintiff at the time he started back; Miss Smith about twelve to fifteen feet.

From the foregoing summary of the evidence, this is seen to be a case where a pedestrian on a public highway, suddenly and without any warning, moved rapidly from a place of safety toward an automobile which was approaching on its own right-hand side of the street, and was injured when, to quote the plaintiff's testimony, he "stepped into the oncoming car." Every witness who knows anything about it swears that the automobile was being driven at a moderate rate of speed, from twenty to twenty-five miles an hour. The driver was keeping a lookout, and the plaintiff was not. Whether we accept his version that he stepped or ran back five or six feet, or that of the defendant and his witnesses that the distance was from ten to fifteen feet, the time that elapsed between his sudden and unforeseen movement and the collision must have been so brief as to be scarcely appreciable. In that interval, according to the plaintiff, it was the defendant's duty to have avoided the collision either by bringing his vehicle to a stop or by driving to the right of the plaintiff. At least, it is argued, the jury was justified in so determining.

In our opinion that is no basis in the evidence for such a determination. The law did not require the de-

fendant to anticipate the plaintiff's sudden move. On the contrary, he had the right to assume that the plaintiff, who had traversed the south half of the street upon which the defendant's automobile was being driven, would either remain where he was or would continue his passage toward the north side of the street. To be sure, when the defendant saw the plaintiff's sudden move, it became his duty to avoid injuring the plaintiff if he could do so by the exercise of ordinary care. The evidence is that he then immediately applied his brakes, swerved to the right, and brought the automobile to a stop in about its own length. If the automobile's speed at the time was twenty miles per hour it would travel approximately thirty feet in a second; if twenty-five miles per hour it would travel approximately thirty-seven feet in a second. Under a statute of this state the brakes on the automobile would be deemed adequate if capable of stopping the vehicle on a dry, hard, approximately level stretch of highway, at the former speed in thirty-seven feet, at the latter speed in fifty-eight feet. § 115-376, O. C. L. A. Actually, the car was brought to a stop in less than twenty feet. We are unable to see how any driver could have done more than the defendant did to prevent injury to the plaintiff.

The plaintiff, in our opinion, failed to sustain the burden of proving the charges in his complaint that the defendant's car was driven at an excessive rate of speed and was not under control; and to impose liability because, in the situation with which he was faced, the defendant failed either to stop his automobile instanter or steer it so as to pass to the south of the plaintiff, would be to abandon the criterion of due care and hold the defendant to the duty of an insurer. The rule of

*Sorsby v. Benninghoven,* 82 Or. 345, 161 P. 251, and of the instruction approved in *Archer v. Gage,* 126 Or. 532, 551, 270 P. 521, governs this case, and constrains us to hold that the verdict is without support in the evidence.

■ As the court said in *Goodson v. Schwandt,* 318 Mo. 666, 669, 300 S. W. 795, quoting from *Rollison v. Railroad,* 252 Mo. 525, 541, 160 S. W. 994:

"To predicate negligence on two seconds of time is in and of itself a monumental refinement. We cannot adjudicate negligence on such pulse beats and hair-splitting, such airy nothings of surmise."

The plaintiff argues that there are circumstances in evidence from which the jury were warranted in inferring that the defendant was driving at an excessive rate of speed.

■ One of these is the character of the plaintiff's injury. There are cases in which it has been held that such evidence—usually in connection with other circumstances—is material on the question of the speed at which an automobile is driven. See, *Asumendi v. Ferguson,* 57 Idaho 450, 65 P. (2d) 713, where a full list of authorities may be found. The action there was for the death of a mother and child caused by collision with a truck. The body of the child was thrown fifteen feet, that of the mother was thrown or dragged 58½ feet. Their bodies were, as the opinion states, "badly mangled". The court held that it was proper for the jury to consider this evidence for the bearing that it might have on the charge that the truck was driven at a high rate of speed. We will not analyze the other cases. It is sufficient to say, so far as this case is concerned, that it would be not a logical deduction, but mere guesswork, to infer that the defendant's auto-

mobile was driven at an unreasonable rate of speed from the facts shown respecting the plaintiff's injury. The plaintiff was not thrown any considerable distance by the force of the collision. The only evidence on that point is the defendant's testimony that "he bounced back a few feet". There is no evidence that he received any severe injuries in his fall to the pavement. He testified to none, and the doctor who attended him testified that apart from the fractured leg the only other injuries were "other bruises which were minor such as bruises around the hip". Whether these bruises were caused by the collision with the automobile or the fall to the pavement there is no way of determining definitely from the record.

■ While we would not be understood as minimizing the seriousness of the plaintiff's injury, we are unwilling to hold that, in the circumstances disclosed here, it has any bearing upon the question of the speed at which the defendant's car was driven. It is a well-known fact, borne out by the evidence, that the bone of the leg may be fractured by the application of comparatively slight force. Dr. Ziegler, testifying for the plaintiff, was asked whether it would take a considerable blow to break the leg, and said:

"Well, a good deal depends. A man standing on one leg, all his weight on one leg, it does not take a teriffic blow to do it but it does take enough to knock a man over and give him quite a jar."

The evidence does not disclose whether at the time of the collision the plaintiff was standing on one leg or both legs. The defendant was driving a Ford automobile carrying five passengers besides himself. With this load, the total weight of the moving mass of iron

and steel which came into contact with the plaintiff's body was no doubt close to two tons. In view of these facts the contention of the plaintiff invites to pure speculation and cannot be sustained.

■ It is next contended that an inference of excessive speed may be drawn from the fact that the defendant's automobile, after the accident, proceeded some distance—the plaintiff claims 150 feet—before it came to a stop and was parked. The only evidence in the record on that subject is to the effect that the defendant brought his car to a stop immediately after the impact and then proceeded to drive his car to the place where he parked it. The argument advanced by the plaintiff is no different from that which was considered and rejected in *Hefling v. Heintz*, 157 Or. 542, 72 P. (2d) 44. That was an action to recover damages for death as a result of a collision at an intersection of streets in the city of Portland between an automobile driven by the plaintiff's intestate and a truck. Upon the point with which we are now concerned the court said:

"Plaintiff contends that the fact that the truck, after colliding with the automobile, had proceeded, before stopping, for a distance of 100 feet in a northeasterly direction was a circumstance from which the jury had a right to infer that the truck was traveling at an excessive rate of speed at the time of the collision. Under the evidence, there is no basis for this contention. The uncontradicted testimony of the plaintiff shows that the truck left no skid marks and that when seen by the only witness who saw the truck at all it was not out of control but was being driven to a place where it could be parked so that the driver could return, as he was in duty bound to do, to the place of the accident. The circumstance, therefore, had no evidential value for any legitimate purpose in the case."

The facts here are to all intents and purposes identical with those mentioned in the Hefling case. There is no evidence of skid marks left by defendant's automobile, and all the evidence shows that the car was not out of control. Hence, the contention is without merit.

■ Finally, it is said that the plaintiff testified that he looked to the west before starting to cross Foster road and, although the view was unobscured for a long distance, he saw no automobile approaching from that direction. From this it is argued that an inference can be drawn that the defendant's automobile was not then in Foster road or was beyond the reach of plaintiff's vision, and, therefore, that it must have been driven at a high rate of speed in order to arrive at 88th Avenue by the time that the plaintiff retreated from the west-bound automobile. The plaintiff did not testify where he was when he looked to the west, but, if we assume that he intended to say that he looked before starting to cross the street, it must be remembered that, according to his testimony, after reaching the center of the street he waited "a minute or two" for the west-bound automobile to pass. In the time that elapsed while the plaintiff was walking from the south curb to the center of Foster road, and the minute, if we take the plaintiff's lower estimate, that he waited, the defendant's automobile, if driven at the rate of twenty-five miles an hour, might well have travelled the distance from 72nd Avenue, where the defendant entered Foster road, to 88th Avenue. We think, therefore, that, if we take all of plaintiff's testimony at its face value, the conclusion sought to be drawn has no adequate foundation.

■ Viewing the evidence in its aspect most favorable to the plaintiff, we are unable to discover a basis for

visiting liability upon the defendant. The plaintiff's own account of the accident constitutes the defendant's exoneration. His counsel, speaking to the question of contributory negligence—upon which it is unnecessary to pass—have defended his conduct on the ground that he acted in a sudden emergency. That may well be, but it was no less an emergency for the defendant. He was given no more time for reflection or consideration than the plaintiff; he was required to act upon the instant; and the proof, without contradiction, shows that he did all to avoid injuring the plaintiff that reasonably could be expected of a man in his position. More the law does not demand.

For these reasons, we are of the opinion that the court below erred in its rulings on the motions for a judgment of involuntary nonsuit and for a directed verdict.

The judgment is therefore reversed, and the cause remanded to the circuit court with directions to enter judgment for the defendant.

Petition for rehearing denied March 11, 1941
ON PETITION FOR REHEARING
(111 P. (2d) 81)

LUSK, J. In a petition for re-hearing the plaintiff has urged two points not heretofore called to the attention of this court, or, as far as can be determined from the record, of the trial court.

It is said, first, that the evidence shows the defendant to have been guilty of negligence as a matter of law because he was operating his automobile in violation of § 115-327 (b), O. C. L. A., which reads as follows:

"In driving upon the right half of a highway the driver shall drive as closely as practicable to the right-

hand edge or curb of the highway except when overtaking or passing another vehicle, or when placing a vehicle in position to make a left turn.''

We think the point is without merit, both because the complaint contains no allegation which may fairly be said to charge a violation of the quoted statute and because the statute was not enacted for the protection of pedestrians but for the regulation of vehicular traffic. See, *Hartley v. Berg*, 145 Or. 44, 53, 25 P. (2d) 932; *Weinstein v. Wheeler*, 135 Or. 518, 529, 295 P. 196, 296 P. 1079; and *Yarbrough v. Carlson*, 102 Or. 422, 427, 202 P. 739. In the opinion, the allegations of negligence contained in the complaint were quoted in full, and it is not necessary to repeat them here. The complaint does not charge that defendant was guilty of negligence, statutory or otherwise, in failing to drive his automobile as closely as practicable to the curb. What the complaint does charge is, that the defendant was negligent in failing to pass to the south of the plaintiff after he saw the plaintiff's peril. That is the construction placed upon his own pleading in the brief of the plaintiff, from which we quote:

''The complaint alleges that the defendant was negligent in failing to reduce the speed of his automobile, after observing the peril of the plaintiff, to a speed which would enable him to stop before coming into contact with the plaintiff. That he was negligent in failing to swerve to the right a sufficient distance to give plaintiff ample room to escape the automobile approaching from the opposite direction.''

Secondly, the plaintiff now asserts that the jury could have found from the evidence that the defendant was on the wrong side of the street when he ran into the plaintiff. This is based upon the testimony of the defendant that the plaintiff was six feet north of the

center stripe of Foster Road at the time he began to retreat from the west-bound automobile, and the testimony of the plaintiff that he had moved backwards not more than five or six feet at the time that he collided with the defendant's automobile. What has already been said is sufficient to demonstrate that driving on the wrong side of the street was not a specification of negligence in the complaint. In the trial itself no such issue was debated, but the question, so far as this point is concerned, was whether the plaintiff stopped at the center of the street or went several feet beyond the center before stopping.

■ It is, of course, elementary that no negligence other than that alleged in the complaint can constitute the basis for a recovery. Not only were the matters now urged not made issues in the pleadings, but they were not suggested on the trial in any requested instruction or in the instructions given by the trial judge, or in any exception taken by counsel for the plaintiff to the instructions or in any request for a ruling whatsoever; nor does the brief filed by the plaintiff in this court contain a hint of them. They are presented for the first time in a petition for re-hearing, and that is too late.

■ The opinion is criticised because, in discussing the claim of the plaintiff that excessive speed in the operation of the defendant's automobile might be deduced from the plaintiff's testimony that he looked to the west before crossing Foster road and saw no automobile approaching from that direction, we failed to give to the word "minute", in the plaintiff's testimony that he waited "a minute or two" for the west-bound automobile to pass, its permissible dictionary meaning, "a point or short space of time; a moment". Granted

that plaintiff is entitled to have this construction placed on the words used by him, to approve the suggested basis for a finding of excessive speed on the part of the defendant would be to sanction the imposing of liability by guess-work. For the conclusion sought to be defended is nothing but an inference based on a further inference, that because plaintiff did not see defendant's automobile it had not yet entered Foster road when plaintiff started to cross that street; and, further, because, regardless of the rule against predicating one inference on another, there is no definite evidence in the record which establishes that, even though defendant's automobile had not then entered Foster road, it could not, if driven at a moderate rate of speed, have reached the scene of the accident between the time that plaintiff looked to the west and the time that he made his unexpected backward move to avoid the west-bound car.

The petition for rehearing is denied.