LLOYD KOOB, appellant, v. ALBERTA SCHMOLT, appellee.

No. 47765.

(Reported in 45 N.W.2d 216)

DECEMBER 12, 1950.

Zastrow & Noah, of Charles City, and R. J. Sullivan, of New Hampton, for appellant.

Reed & Beers, of Waterloo, and E. P. Donohue, of New Hampton, for appellee.

SMITH, J.—I.  Was there sufficient evidence of defendant's alleged negligence to carry that issue to the jury?  That is the principal question on this appeal.

On May 29, 1949, at approximately 4:30 p.m. plaintiff, age twenty-three, was riding on the "buddy seat" of a motorcycle driven by Wallace Lynes, age twenty. They were traveling southward on paved highway 218. About a mile and a half south of Nashua the highway curves to the right in a westerly direction. As they approached this curve from the north defendant's car came toward it from the south. Lynes decided he could not make the curve, so instead of following his own lane around to the right he went forward to the left side of the curve to the shoulder.

He testifies on cross-examination they had been traveling around 80 miles per hour "a quarter of a mile back and when I approached the curve I was traveling 55 or 60 when I started to cross." (That would be from 80⅔ to 88 feet per second.) He estimates defendant's car coming toward him was "a little better than three hundred feet" away when he "started to go across the black line onto the left-hand side of the road. * * * Q. Let me ask you one thing more. Did you expect this woman to turn to her left-hand side of the road to avoid hitting you? A. I would say she could have. I didn't expect her to, although she could have done it easily enough."

He also testifies on cross-examination: "Q. You rounded that curve at about—great speed? A. I imagine it would be. Q. And the emergency there was created by you, wasn't it? A. Yes. Q. You knew you were on the wrong side of the highway. A. Yes."

The theory of the plaintiff is probably best indicated by this part of Lynes' direct examination:

"I came down the hill and as I approached the curve I didn't feel that I could make the curve on the inside, which is the short side of the curve, so I went to the left-hand side, took the shoulder and came around the curve; and then as I hit the shoulder I saw a car driven by Mrs. Schmolt. I had slowed down and she began to creep over to the gutter on my left-hand side—well it would be my right-hand side at that time—and as I approached the car, about 25 feet or so in front of the car, she began to turn to the curbing and then we had a collision and that's about as much as I know at that time.

"Q. Tell us what you observed that car do? A. That car slowed down. I noticed that immediately. Down to what I would

say ten miles an hour. She crept towards the gutter, made no appearance of going onto the shoulder till the last few moments. And the front wheel of the car wasn't touched, as I remember. Q. What was the distance between your motorcycle and the east edge of the pavement? A. I would say my judgment would be about four and a half or five feet. * * * Q. How long had you been traveling on the shoulder prior to the collision? A. Around 240 feet."

On cross-examination he testifies: "Q. You got down to 65 or 70 miles an hour? A. No, I would say 40 or 45, 35, along in there."

Thirty-five miles per hour equals $51\frac{1}{3}$ feet per second. If defendant was approaching at 10 miles per hour they neared each other at 45 miles per hour, or 66 feet per second. The figures indicate the almost instantaneous character of the transaction upon which the jury would be asked to find defendant negligent if plaintiff's contention were to prevail. These are the figures most favorable to plaintiff. According to them the motorcycle was on the shoulder only about three seconds and the defendant "began to turn to the curbing" or "to creep over to the gutter" less than a half second before the collision.

Lynes' is the only testimony plaintiff offers as to defendant's alleged negligence. He at no time says she left the pavement. He testifies at one point: "As I came towards her on the shoulder she got as far as the gutter." She was at all times on her own side of the highway. Even in the view most favorable to plaintiff, the jury in order to find for plaintiff would have had to infer or presume negligence on defendant's part instead of placing the burden on plaintiff to prove it and indulging the presumption of due care in plaintiff's favor.

Defendant properly argues:

"The plaintiff's witness [Lynes] states he was $4\frac{1}{2}$ to 5 feet on the shoulder east of the slab, but the nearest he gets the defendant to that point is 'she crept to the gutter' and 'to the curb' on the east side of the paving. He at no place states that the defendant went off the pavement, onto the shoulder and struck the motorcycle. So far as the record discloses the motor-

cycle might just as well have veered to its right toward the car and thus caused the collision."

■ II. In determining whether the record would justify submission of the issue of defendant's negligence to the jury we should take into account the emergency that confronted defendant under this record. Rich v. Herny, 222 Iowa 465, 269 N.W. 489; Carstensen v. Thomsen, 215 Iowa 427, 245 N.W. 734. That is a factor in determining the reasonable character of the acts of one in such a situation. Restatement of the Law, Torts, section 296.

■ Plaintiff argues "the defendant did not [claim] and has not claimed that an emergency existed * * *." It is not clear on what this argument is based. Defendant did not need to plead emergency. McKeever v. Batcheler, 219 Iowa 93, 95, 96, 257 N.W. 567. Certainly it was urged in her motion to direct and is argued here.

■ Notwithstanding an intimation in one of our cases that the doctrine of emergency is available only to establish freedom from contributory negligence (Cubbage v. Estate of Youngerman, 155 Iowa 39, 50, 134 N.W. 1074) it clearly is to be considered in any case in which is involved the conduct of a person who is put in peril not of his own creation. Boice v. Des Moines City Ry. Co., 153 Iowa 472, 476, 477, 133 N.W. 657; McKeever v. Batcheler, supra; Rich v. Herny, supra; 65 C. J. S., Negligence, section 17a, page 411.

That was defendant's situation here. She was in peril through no act of her own. When the motorcycle started across in front of her she had to make an immediate decision. Under the record she had approximately three seconds in which to make it. She slowed down to ten miles per hour. She could not know it was Lynes' intention to go clear over to his left and pass her on her right. For aught she could at first know, he was merely swerving to her side and would return to his own.

No wonder she "began to creep over to the gutter" or to "turn to the curbing." And if, in the emergency not created by her, she mistakenly guessed wrong her decision should not be submitted to the jury as evidence of negligence. The suddenness of the emergency presented was such that it cannot be said "an ordinarily prudent person would not have acted in the same

manner under the same circumstances." Rich v. Herny, supra, 222 Iowa at page 470.

"One confronted with a sudden emergency, without sufficient time to determine with certainty the best course to pursue, is not held to the same accuracy of judgment as would be required of him if he had time for deliberation." 65 C. J. S., Negligence, section 17a, page 408. See also 38 Am. Jur., Negligence, section 41.

We have pointed out that the figures of plaintiff's own witness show the imminency of the emergency confronting defendant. If it be thought we are dealing in refinements we can only reply in the language of the Missouri Supreme Court: "To predicate negligence on two seconds of time is in and of itself a monumental refinement." Rollison v. Wabash R. Co., 252 Mo. 525, 541, 160 S.W. 994, 999, cited in Goodson v. Schwandt, 318 Mo. 666, 669, 300 S.W. 795, 796, and Hamilton v. Finch, 166 Or. 156, 166, 109 P.2d 852, 855, 111 P.2d 81.

III. Defendant argues earnestly that plaintiff was guilty of contributory negligence as a matter of law and that the motion to direct was properly sustained for that reason also.

We need not discuss this proposition since what we have already said is determinative of the case.

The decision of the trial court is accordingly affirmed.—Affirmed.

WENNERSTRUM, MULRONEY, MANTZ, and HAYS, JJ., concur.

OLIVER, J., GARFIELD, C.J., and BLISS, J., dissent.

OLIVER, J. (dissenting)—I believe the order directing a verdict for defendant at the conclusion of the evidence for plaintiff was erroneous and I respectfully dissent from the decision affirming it.

The majority opinion holds there was no proof defendant's automobile left the pavement and that "the jury in order to find for plaintiff would have had to infer or presume negligence on defendant's part * * *." In so holding the opinion quotes at length from the testimony of Lynes and states it is the only testimony as to defendant's alleged negligence. This statement may be open to question.

Plaintiff-Koob testified that when the motorcycle was on the shoulder he saw the car coming "and my first impression was it was a woman driving, and my second impression was that she had turned and was headed toward us, directly in our path, and it flashed into my mind that she was turning into us and that she was going to hit us." The trial court sustained a motion to strike the quoted testimony as opinions and conclusions of the witness. The language "my impression *was*" as used by the witness merely expressed the impression produced upon his mind at the time by his sense perception. It was practically synonymous with, "it appeared to me" or "I perceived" or "I saw." I believe the order sustaining the motion to strike was erroneous. However, the testimony is in the record before us and if deemed necessary might be considered for the purpose of this appeal.

Moreover, there was other evidence apparently overlooked by the opinion. Plaintiff testified:

"As I glanced down when we hit the shoulder and as I looked up there was this car coming and I saw it was a woman driver and then I seen that the car was coming for us and that we was headed over the shoulder. And that's what happened. We were hit. * * * Q. On which shoulder were you, Mr. Koob, when the accident happened? A. We were to the left. * * * It was a wide shoulder. * * * Q. How did you get from the curve in the highway into the accident? A. We were on the shoulder."

Witness Roach testified:

"Just before the curve they [the motorcycle] went over on the shoulder and the other car appeared about right in the curve and then there was a big cloud of dust between them and this other car. * * * The car turned straight across and nosed into the east ditch. * * * Q. On which side of the road were they when you saw this? A. It would be my left hand, on the shoulder."

Immediately following Lynes' testimony on cross-examination, quoted in the majority opinion, he testified:

"Q. And at that time you were still on the left-hand side of the highway on the parking? Is that correct? On the shoul-

der? A. On the shoulder, yes. Q. Had you attempted to get the motorcycle back on your own side of the highway, the west side of the highway? A. No, definitely not."

Defendant states in argument: "So far as the record discloses the motorcycle might just as well have veered to its right toward the car and thus caused the collision." The majority opinion quotes this argument with approval and adopts it as a basis for its decision. I am unable to find anything in the record to support the argument. All the evidence I can find is to the contrary. Even without the testimony of plaintiff and Lynes that the car turned into the motorcycle it would seem the collision upon the shoulder would necessarily indicate the automobile must have gone off the pavement and upon the shoulder. Hence, I would hold that question was one of fact for the jury.

The majority opinion states: "He [Lynes] estimates defendant's car coming toward him was 'a little better than three hundred feet' away when he 'started to go across the black line onto the left-hand side of the road.' "

Based upon this, the opinion states: "When the motorcycle started across in front of her she had to make an immediate decision. Under the record she had approximately three seconds in which to make it." Although the quotations from Lynes' testimony are correct, he testified also:

"Q. How far back would you say it was that you pulled over? A. Well, it was eight to twelve hundred feet. Q. You were that far back from the approaching car? A. Yes."

On a motion for directed verdict the evidence must be viewed in the light most favorable to the party against whom the motion is directed. This rule requires that such party be given its benefit, not merely as to some but as to all the evidence. Viewed in the light most favorable to plaintiff the evidence shows that "when the motorcycle started across in front of her" defendant was eight hundred to twelve hundred feet distant and would have perhaps eight or ten seconds or several times "approximately three seconds" in which to make a decision. And if the motorcycle started across approximately eight or ten seconds before the accident it would seem the discussion and quotation in the majority opinion of "refinements" of two or

three seconds would not be appropriate to the evidence in this case.

The majority opinion states that, considering the emergency confronting defendant when the motorcycle started across in front of her "if * * * she mistakenly guessed wrong her decision should not be submitted to the jury as evidence of negligence."

The general rule in such cases is thus stated:

"Emergency. The questions whether an emergency existed, and whether a person who was confronted with a sudden emergency exercised such care as an ordinarily prudent man would have exercised, when confronted with a like emergency, ordinarily are questions of fact for the jury." 65 C. J. S., Negligence, section 252a, page 1134.

That is the rule in this jurisdiction. Leinen v. Boettger, 241 Iowa 910, 924–926, 44 N.W.2d 73, 81, 82; Cooley v. Killingsworth, 209 Iowa 646, 649, 650, 228 N.W. 880; Sanford v. Nesbit, 234 Iowa 14, 19, 20, 11 N.W.2d 695; Babendure v. Baker, 218 Iowa 31, 33, 34, 253 N.W. 834; Luppes v. Harrison, 239 Iowa 880, 886, 887, 32 N.W.2d 809; Carpenter v. Campbell Auto Co., 159 Iowa 52, 62, 63, 140 N.W. 225; Bletzer v. Wilson, 224 Iowa 884, 889, 890, 276 N.W. 836.

Rich v. Herny, 222 Iowa 465, 269 N.W. 489, and Carstensen v. Thomsen, 215 Iowa 427, 245 N.W. 734, cited in the majority opinion are extraordinary cases in each of which defendant's vehicle before injuring plaintiff came into a collision with a third automobile, the negligent operation of which was apparently the proximate cause of plaintiff's injury, but whose owner or operator had not been made a party to the suit for damages. There is nothing extraordinary about the case at bar which warrants a decision contrary to the general rule. The evidence on behalf of plaintiff indicates the motorcycle was continuing its course upon the dirt shoulder, the two vehicles would not have collided had the automobile remained upon the pavement, and that at the last moment defendant turned it off the pavement and upon the shoulder where it collided with the motorcycle. Furthermore, in the cited cases there was evidence on behalf of the defendants while in this case defendant has

offered no explanation or excuse for her conduct in turning her automobile off the pavement and into the motorcycle.

The majority opinion does not consider the question of plaintiff's contributory negligence. However, it may be said Lynes and plaintiff were not engaged in a joint enterprise, plaintiff was merely a guest who did not direct or have the right to direct the operation of the motorcycle. Therefore, the negligence of Lynes would not be imputed to plaintiff. Wagner v. Kloster, 188 Iowa 174, 175 N.W. 840. Plaintiff was not in a position to properly observe traffic on the road ahead and Lynes was at all times fully cognizant of defendant's approaching car. Williams v. Kearney, 224 Iowa 1006, 1009, 1010, 278 N.W. 180. Hence, plaintiff's contributory negligence was a question for the jury. Schwind v. Gibson, 220 Iowa 377, 386, 260 N.W. 853; Bradley v. Interurban Ry. Co., 191 Iowa 1351, 1353, 183 N.W. 493, 494; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 243 N.W. 561; Carpenter v. Wolfe, 223 Iowa 417, 424, 273 N.W. 169; Johnson v. Overland Transp. Co., 227 Iowa 487, 498, 288 N.W. 601.

GARFIELD, C.J., and BLISS, J., join in this dissent.